MISSISSIPPI ROAD SUPPLY CO. *et al. v.* HESTER.

(Division B. April 24, 1939. Suggestion of Error Overruled June 5, 1939.)

[188 So. 281. No. 33653.]

**L. Barrett Jones** and **Chambers & Trenholm,** all of Jackson, for appellants.

842

844

**Whitfield Pierce,** of Jackson, and **W. S. Henley,** of Hazlehurst, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

W. E. Hester filed a bill in the chancery court of Copiah county, as a taxpayer of the county, against the appellants, seeking to recover from appellants money paid to them by the Board of Supervisors of Copiah County for certain road machinery, equipment and implements involved in contracts made between the appellants and the Board of Supervisors. The allegations of the bill with respect to Hester's right to bring the suit are as follows: "That the complainant is a resident citizen of Copiah county, Mississippi, and a property owner and taxpayer in said county and also a qualified elector therein." He did not therein state that he brought the suit on behalf of all the taxpayers of the county who were willing to join in the suit, and invite them to do so.

In the subsequent part of the bill he alleges, in reference to his right, as follows: "Complainant respectfully shows unto the Court that several months ago he filed a bill of complaint attacking the legality of said transactions, setting forth wherein said funds had been illegally paid to said defendants from the treasury of Copiah county, Mississippi. Said suit is a matter of public knowledge and was well known to the Board of Supervisors of Copiah county, Mississippi, and to the attorneys for said Board, and was well known to the District

Attorney of said district, and to the Attorney-General of the State of Mississippi, and to the State Tax Collector, and that the complainant has requested each of said public officials to institute proceedings to recover the funds illegally paid as aforesaid, and that each of said public officials have failed and neglected to institute such proceedings. Wherefore, complainant respectfully shows unto the Court that an action hath accrued to him as a taxpayer of Copiah county, Mississippi, to bring an action for the refund of said moneys to said county.''

It will be noted from this quotation that the appellant did not allege that he produced to the officers named in this allegation the orders and facts upon which he relies to maintain his suit. He merely alleges that the matters were of general knowledge, and that the officers knew of the suit which he theretofore filed, and that he had requested them to bring suit. This will be discussed further on in this opinion.

The allegations of the bill of complaint are addressed to the failure of the Board of Supervisors to act in pursuance of the statutory requirements in letting the various contracts and paying the said moneys at various and numerous times. The only other contention is that under chapter 196, Laws of 1932, providing a method for construction and reconstruction and maintenance of public roads and bridges, it is contended that the term ''implements'' does not apply to the hiring or purchase by the Board of Supervisors of road machinery of the type commonly used in road building, repair and maintenance, and of the type involved in this suit. His contention is that the word ''implement'' is limited to such tools or appliances as laborers generally use in performing their work; and that the term does not apply to a machine which does the work under the direction and control of men. Chapter 196, Laws of 1932, reads as follows:

''Methods of Construction and Maintenance.—The methods of constructing, reconstructing, and maintaining the public roads and bridges in this state, other than

those under the actual charge of the State Highway Department, shall be as follows:

"The Board of Supervisors of any county may purchase and his teams, implements, and material, and employ labor, and work, construct, reconstruct and maintain the public roads and build bridges under the direction of a competent road commissioner, to be employed by the Board, in its discretion, or under the direct supervision of the Board of Supervisors; and may do any and all things necessary to be done to work, construct, reconstruct and maintain the public roads, and build bridges as herein provided. If in the opinion of the Board of Supervisors any part of the work necessary to be done in working, constructing, reconstructing and maintaining the public roads and building bridges in such county, or Supervisors District or Districts, or any part or parts thereof, can best be done by awarding contracts therefor, the Board of Supervisors may in its discretion, make contracts therefor; and the Board of Supervisors may, in its discretion, use any funds heretofore or hereafter raised by bond issue or otherwise for working, constructing, reconstructing, maintaining and improving the public roads and building bridges as herein provided. Provided, however, that in no event shall any contract provided for above be awarded that shall extend beyond thirty days from the termination and end of the term of office of the members of the Boards of Supervisors awarding same." Section 1.

The bill is extremely lengthy and prolix, and the allegations, or the substance thereof, cannot be set out in an opinion within reasonable limits. It may be summarized, however, by stating that it alleges that the appellee is a resident citizen of Copiah county, a property owner and taxpayer, and also a qualified elector therein. As ground for relief it sets out the contract by and between the Board of Supervisors of Copiah county and the several appellants involving the leasing of certain road equipment by the appellants to the

Board of Supervisors, and the extension of the said contracts from month to month, with options to purchase; and that the contracts are void, as constituting installment purchases, all payments made thereunder were illegal, and other payments were made to the appellants for rentals and supplies which were also illegal; that such payments made under lease contracts were in fact payments on the purchase price of machinery, and that said payments, and the other illegal payments, exceeded the value of the machinery; and that the Board had evidenced its intention of continuing to make payments under said leases and upon other improper claims of appellants; and that the said contracts were also void because they violated certain enumerated statutes; that road machines were not "implements;" that the rental payments provided for were excessive, and would force the county ultimately to purchase the equipment; that the contracts were schemes to evade the law, and that certain stated irregularities existed in the making thereof; that they violated section 5979, Code of 1930, and were not provided for in the budget of the county. It also charged that the facts stated were known to the Board of Supervisors, to its attorney, to the district attorney, the Attorney-General, and to the State Tax Collector; and that all of these had failed and neglected to institute suit.

The bill also prayed for discovery of certain matters pertaining to the contracts, and for an injunction, stopping payment of future rentals or installments, etc.

Among the exhibits to the bill was an order pertaining to the leases of road implements for the use of Copiah county, which will serve as an example of various contracts involved. This order and contract reads as follows:

"In the Matter of Purchasing or Leasing Road Implements for the use of Copiah County, Mississippi.

"Be it remembered that on the 13th day of August, 1936, there came on to be further considered the bids on

file proposing to sell, or to hire, or to lease to Copiah county, certain road implements for the use of the several districts of Copiah county, Mississippi, in constructing, reconstructing and maintaining its public roads, under section 1, chapter 196, Laws of Mississippi 1932, page 498, and it appearing that due notice was given by this board of its intention to so purchase or hire said road implements at the March, 1936, meeting, for said purposes, by order made at a former meeting, and by publication for three consecutive weeks, in the Hazlehurst Courier, a newspaper published in Copiah county, and having a general circulation therein, of a notice calling for bids at said meeting accordingly, proof of publication of which is now on the minutes of said meeting, and it further appearing that after due consideration an order was made at said March meeting accepting the bid of Mississippi Road Supply Company, a responsible bidder, to sell or lease the hereinafter described implements, as the lowest and best bid on file, and which was adjudged to be satisfactory, but leaving for future determination the matter of buying or leasing said implements, and it now appearing to this Board that it is to the best interest of the public that said implements be hired or leased, rather than bought at this time, it is therefore:

"Ordered and adjudged by the Board of Supervisors of Copiah county, Mississippi, that said bid of the Mississippi Road Supply Company to lease to this Board the said road implements described in the lease contract hereinafter contained for said purpose, be and the same hereby is accepted, said lease contract contained herein to become the contract and agreement between said company and this Board for the leasing of said road implements, said contract being in words and figures as follows, to-wit:

"The Mississippi Road Supply Company, a corporation, of Jackson, Mississippi, as lessor, hereinafter called the 'company,' does hereby lease, hire and let unto the Board of Supervisors of Copiah county, Mississippi, as

lessee, for the use of said county in constructing, reconstructing and maintaining its public roads under section 1, chapter 196, page 498, Laws of Mississippi, 1932, the following described road implements, to-wit:

"Three wide tread TD-40 Diesel McCormick Deering Tractors, Two Adams Model 104 Graders, with Scarifiers, and One Adams Model 104 Grader without Scarifier.

"Said lease shall be for an initial period of one month, beginning on the 15th day of August, 1936, the cash rental for which period shall be the sum of $831.43 payable in advance on or before said date as the rental for one month, and the lessee shall have the option, to be exercised by order spread upon its minutes before the termination of said initial period, to thereafter extend this lease into a letting by the month, from 15th to 15th, the cash rental for each such month to be the sum of $831.43, payable in advance on or before the 15th day of each month.

"In the event this lease be so extended and the monthly lease rental be not paid in advance for any one month, the lessee agrees not to use or operate said implements during said month until it shall have paid the lease rental for said period, or until it shall have paid the lease rental in due course for a subsequent month, it being the intention that lessee shall not use or operate said implements during any lease month for which it shall not have paid the lease rental in advance as herein provided.

"The company agrees to keep said implements insured against loss or damage by fire or tornado in its own name to such extent as it may deem necesasary, and in event of their destruction by fire or tornado, this lease shall thereupon terminate. In event of damage to said implements by fire or tornado, the Company shall repair the same promptly at its own expense; otherwise the lease shall terminate.

"The lessee agrees that said implements shall be used and operated only by experienced and careful operators; that it will keep said implements in good repair

and operating condition at all times at its own expense, usual and ordinary wear and tear, or damage by fire or tornado excepted; that it will return said implements promptly to the Company when required hereby in as good condition as when received, usual and ordinary wear and tear or damage by fire or tornado excepted; that or will indemnify and save harmless the company from all claims for damages to persons or property caused by said implements or their operation until the same shall have been returned to the Company as herein provided; and that it will, as an additional consideration for the use of said implements, pay to the Company a sum equal to any and all taxes that may be assessed against it on account of said property being in Copiah county while this lease is in effect.

"In event lessee shall fail to pay the lease rental in advance for any one month, but otherwise comply with the terms hereof, it may keep said implements, but without using the same, for one month, but not longer without the written consent of the Company, and for a breach of this condition the Company may, at its option, by written notice to lessee, declare this lease terminated immediately.

"Should the lessee become the purchaser of said implements in any manner at any time while this lease is in force, this lease shall terminate upon payments by the lessee to the Company of the then agreed purchase price.

"If all of the terms of this lease shall have been fully complied with by the lessee, and the same shall have remained in effect until the full payment of all lease rentals for a total of eleven months or more (including the initial period), then the lessee shall have the right, at its option, exercised by an order upon its minutes, to purchase said implements at and for the sum of $9017.27 at any time thereafter while they remain in possession of lessee, by notifying the Company accordingly and making prompt payment to it of said sum, and this lease shall constitute a continuing offer by the Company to sell said

implements to lessee accordingly. If this option be not exercised, then this contract shall continue in force, subject to cancellation at the end of any rental month by the Company by two weeks notice in writing to the lessee, or by the lessee by return of said property to the Company.

"The title to said property shall at all times be and remain in the Company (unless the same be purchased and paid for by the lessee) and all moneys received by the Company hereunder, except for a purchase of said implements by prior agreement or under the foregoing option, shall be taken and held as a reasonable rental for the use of said implements by the lessee, whether or not lessee shall have used the same or any part thereof.

"Whenever this contract shall terminate for any reason whatever, the Company shall be entitled to the immediate possession of said property without further notice or demand, unless the same shall have previously been purchased and paid for by lessee, and may take possession thereof whenever and wherever found, entering upon any property of lessee for that purpose.

"This contract shall be fully assignable by the Company, and any assignee hereof shall have the same rights hereunder as if he or it were the original lessor hereunder.

"Be it further ordered that the President and Clerk of this Board be and they hereby are authorized and directed to execute a contract with said Mississippi Road Supply Company, accordingly."

Aside from the question of the authority of the Board of Supervisors to lease or hire or purchase implements, under chapter 196, Laws of 1932, the complaints are addressed to the methods used, or failure to observe statutory requirements by the Board in making the various contracts; and in allegations that contracts were really made by individual members of the Board of Supervisors for their own districts, and spread upon the minutes thereof as orders of the Board. Whereas, it is alleged,

the Board did not, as a body, participate in making the contracts and bring its judgment to bear thereon.

The bill was demurred to on numerous grounds—among others, that the complainant was not authorized to bring suit, and had no authority, as a taxpayer, so to do.

The learned Chancellor took the view that the term ''implement'' used in the statute did not embrace road machines. In the course of his opinion, which is made part of the record, he states: ''A statute providing for 'implements and teams' distinguishes the mule from the harness, wagon, scraper and plow, and the tractor, or road machine, from all these, as mechanical apparatus in a different class, though designed for greater efficiency towards the same object. In this sense the machine may be defined as a thing, or contrivance, directed by man to do his work, as distinguished from a thing used by him in performing the work himself. A road machine, or tractor, therefore is not an 'implement' in the statutory sense, and the Board was not authorized to lease or purchase the same in mode and cost complained of.''

The right of a taxpayer to bring suit on behalf of a county or the public is only such as is authorized by statute. The statutes have provided for officers whose duties are defined by law, who are to bring suits in proper cases in behalf of counties, state, and other public bodies. These officers are charged with a duty and a discretion; and they bring their judgment to bear upon whether or not a case is one for recovery of public moneys, or public obligations, and these are the representatives of the public; in all cases not otherwise provided for, as we see and understand these statutory provisions authorizing the taxpayer to sue, the power extends only to suits for moneys paid to an object not authorized by law, and not for paying out money to an object authorized by law in violation of statutory directions. One of the sections which provides for suits by a taxpayer is section 259, Code of 1930, which provides:

"If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer who will sue for the use of the county, and who shall be liable for costs in such case."

In Miller v. Tucker, 142 Miss. 146, 105 So. 774, it was held under this section, and under chapter 704, Laws of 1924, that where an allowance was made by the Board to an object authorized by law, although in disregard of statutory directions, members of the Board were not liable individually, on their bonds, for such allowance so made. This case followed Paxton v. Baum, 59 Miss. 531, holding that the Board was not liable individually and on their bonds for an act authorized by law, although not done in accordance with statutory directions. In Weissinger et al. v. Davis et al., 112 Miss. 625, 73 So. 617, it was held that where a taxpayer brings suit under this section, and it is shown that the object of the appropriation is lawful, an averment of the facts, charging corruption, does not give the taxpayer a right to maintain an action. See section 270, Code 1930.

In the case of American Oil Co. et al. v. Interstate Wholesale Grocers, Inc., 138 Miss. 801, 104 So. 70, 72, it was held that a taxpayer, as such does not have the right to bring suit, unless specially authorized by law so to do; that a private citizen cannot bring suit on behalf of a county, to challenge the validity of a lease of part of the county's property, being the courthouse square in that case, no specific authority to bring such suit being given him by statute. It was held in that case that section 346, Code of 1906, which is section 259, Code of 1930, did not give the taxpayer the right to bring that suit. In that opinion it is said: "It is a familiar rule that, where the law specifies conditions upon which an action may be maintained or a thing done, the naming of certain things

will by implication exclude the things not named under the rule 'expressio unius est exclusio alterius.' It would be manifestly confusing to public business and troublesome to the officers charged with the administration of public affairs if any citizen of a county may at any time challenge the legality of the actions of the board of supervisors or of any of its contracts. Where the board undertakes to impose a burden upon a citizen without authority of law, he may then contest the legality of the action, not on behalf of the county, but to vindicate his own rights if he be affected by such action; that is to say, if he would have an additional burden imposed on him by such act of the board. But this does not authorize him to litigate contracts made by the county in which he has no property or financial interest.''

The only other statute to which our attention is directed, and which we have found, are sections 197 and 5981, Code of 1930, which are governed by the same principles as the section just discussed. In other words, the suit can only be maintained where an allowance is not authorized by law. Section 5981, Code 1930, authorizes suit on the official bond of officers failing to comply with the provisions referred to in said section, and does not extend to a general right to sue for any obligation that may be due the county. The right of a taxpayer to bring suit on behalf of the public was examined and fully discussed in McKee v. Hogan, 145 Miss. 747, 110 So. 775, in which it was held that before such suit can be brought, and as a condition thereto, the taxpayer must bring his bill on behalf of the public, and invite the other taxpayers to join in the suit, and the bill must have proper allegations showing that the suit is brought on behalf of the general public, and a failure to secure action by the public officers in the public behalf.

The bill in this case did not comply with the requirements of the statute for the bringing of suit by the taxpayer on behalf of the public; it does not invite the public to join in the suit, nor does it purport to be in

the interest of the entire public, or of all the taxpayers who are willing to join in the suit.

It is not sufficient merely to request public officers to bring suit about a matter involving the legality of contracts, and other public questions affecting the citizens of the county; but the facts should be shown, which are relied upon by the taxpayer to warrant the institution of, and recovery in, such suit by such public officer. It is not sufficient to state that the matter is notorious, and that the officer or officers know of the facts, and have failed or neglected to bring suit. The taxpayer must go further. He must present to the officer sufficient facts and data to convince the legal mind that the facts warrant institution of the suit. It cannot be too strongly emphasized that these requirements should in all cases be complied with strictly, because where suits are brought, of which the present case is a good example, involving a multitude of transactions, and the entire highway system of a county, and contracts affecting such system, should not be disturbed for light and fanciful reasons. In such cases it is far safer to trust to the officers charged with the duty of examining into the matter, and of exercising judgment in reference thereto; such judgment and action should not be interfered with, except for strong reasons. It is not in every case where funds have been voted, or contracts made as to an object authorized by law, and where statutory directions have not been followed, that the county or the public would be entitled to recover. This is well illustrated by the case of the City of Okolona v. Chickasaw County, 171 Miss. 424, 157 So. 690, 693. The opinion in this case is a wholesome announcement of righteous doctrine, and it may be that through failure to comply with numerous technical requirements which officers like Boards of Supervisors, in the conduct of public business, may not have strictly complied with, and in proper case, at a proper time, might have been maintained in numerous instances, to prevent the consummation of a contract, or even to recover funds

paid out under it, where the law has been disregarded in substantial particulars. But such questions may be safely left to the discretion of officers elected by the public to challenge such irregularities, instead of being undertaken by the taxpayer, possibly of a litigious spirit, challenging whatever did not suit his personal views.

In the case of City of Okolona v. Chickasaw Co., supra, the Court referred to the case of Commonwealth v. Scarborough, 148 Ky. 561, 147 S. W. 31; quoting from the City of Okolona case in reference thereto, is the following: "In that case the defendant was the health officer of the county, and as such performed certain services for which the county was authorized under the statute to pay him, and for which the county did pay him. But also under the statute he was to perform his duties under the orders and directions of the state board of health, so that, until he had such orders and performed his services in accordance therewith, he had no legal claim against the county. The duties were actually performed by him, but without any order of the state board; and later suit was brought against him to recover back the money paid to him. In denying recovery, the court held that, if the transaction had been wholly beyond any warrant of law, there would have been a different question, but, where the thing done was authorized to be done and to be paid for, but was done without compliance with an incidental requirement of the statute, the court will not compel the repayment of the money and let the public continue to enjoy the benefit of the services rendered."

Further on in the opinion, at page 694, it is said, after discussing the law on the subject: "On the other hand, where the appropriation has been made to an object authorized by law, and which it was within the lawful jurisdiction of the board to make, and the services or the work or the supplies represented by the payment have been fully rendered or furnished, all in good faith, and in the belief that all necessary procedural steps have been taken, the element of equity and good conscience rests

then on the side of the payee, and recovery back cannot be had merely because some procedural defect in the contract or in the minutes or some other like matter has, upon subsequent examination, been found to be insufficient or defective.''

The question then presents itself as to whether the word ''implements'' as used in section 196, Laws of 1932, quoted above, embraces road machines of the type here involved; or whether it refers to mere tools which a laborer, in the performance of manual work may use in that regard.

Statutes must be construed in connection with the subject-matter, and purpose for which they are enacted; and it appears to us that the object here was to authorize the Board of Supervisors to construct, reconstruct and maintain public roads and bridges in the state; and to accomplish this purpose they were given the power to purchase and hire teams, implements, and materials, and to employ labor, and to work, construct, reconstruct and maintain public roads, and build bridges, under the direction of a competent commissioner to be employed by the Board, or under its supervision; *''and may do any and all things necessary to be done to work, construct, reconstruct and maintain the public roads, and build bridges as herein provided.''*

It was, in our opinion, the intention of the Legislature that the Board of Supervisors should have power to purchase any equipment or implements, or working appliances customarily used and useful in performing such work. And this view is strengthened by the part of a sentence italicized above, the italics being ours, and not that of the legislature.

The word ''implement'' is given a broad and comprehensive definition in the law books. Mr. Black, in his Law Dictionary, defines it as ''Such things as are used or employed for a trade, or furniture of a house.'' Citing Coolidge v. Choate, 11 Metc., Mass. 79, 82. ''Whatever may supply wants; particularly applied to tools,

utensils, vessels, instruments of labor; as the implements of trade or of husbandry," citing authorities.

In 4 Words and Phrases, First Series, pages 3424, 3425, numerous definitions are given of the term "implements" " 'Tools and implements,' within the meaning of the statute exempting from execution the tools and implements of a debtor, include various machines for making boots, owned by the debtor and used in his shop, although he employs four or five men to help him." Again: "Farm tools and machinery. 'Implements and tools,' within the meaning of exemption statutes exempting such tools and implements when necessary to carry on the debtor's business, includes a logging capstan and cable and tools used in logging by one engaged as a farmer, if necessary to be used in clearing and improving his farm." And again: "Exemption Act (Comp. Laws 1879, chapter 38), section 3, subd. 8, provided that necessary tools and implements of any mechanic or other person, used and kept for the purpose of carrying on his trade or business, shall be exempt. It was held that, though the word 'tools' alone, as held in Buckingham v. Billings, 13 Mass. 82, Danforth v. Woodward, 27 Mass. (10 Pick.) 423, 20 Am. Dec. 531, and Spooner v. Fletcher, 3 Vt. 133, 21 Am. Dec. 579, did not include a printing press and printing materials, such press and materials were clearly within the meaning of 'implements,' as the term was used to extend the term 'tools' in the statute." Citing Bliss v. Vedder, 34 Kan. 57, 7 P. 599, 55 Am. Rep. 237. "Comp. Laws 1879, p. 437, c. 38, section 3, providing that every person, residing in the state and being the head of a family, should have exempt from seizure and sale in attachment, execution, or other process, issued from any court in the state, inter alia, the necessary tools and implements of any mechanic, miner, or other person, used and kept for the purpose of carrying on his trade or business, should be construed to include a job printing press, used and kept by a person for the purpose of carrying on his trade or business as a job printer, for it might

be as much a necessary tool or implement of such a person as an ax to a carpenter or an anvil to a blacksmith. The term 'implements' is not to be confined to such implements only as are used by the hand of one man. Jenkins v. McNall, 27 Kan. 532, 533, 41 Am. Rep. 422.''

To the same effect Sallee v. Waters, 17 Ala. 482, 486.

Many other definitions are contained in this book, and also in the Second Series of 2 Words and Phrases, Implements, pages 957, 958, from which we quote as follows: ''Bridge builders' appliances. A buggy used by a bridge company to elevate steel beams, consisting of a tongue with two large wheels connected by an axle, constituted an 'implement,' within Employers' Liability Act (Laws 1897, chapter 415, page 467, section 18), requiring reasonable care on the part of the master in furnishing 'implements.' Pluckham v. American Bridge Co., 104 App. Div. 404, 93 N. Y. S. 748, 750.'' Also, as follows, from the same: ''Cheesemaker's appliances. Cheese vats, presses, curd knives, and the like, used by the owner, a cheese maker in making cheese by hand, are tools and 'implements,' within the meaning of the exemption laws. Fish v. Street, 27 Kan. 270, 272, 274.'' And, again: ''A buggy and harness belonging to an insurance agent, used by him with his horse to carry on his business, are exempt as tools and 'implements' used and kept to carry on a trade or business, exempted under subdivision 8 of section 3 of the act relating to exemptions. Wilhite v. Williams, 41 Kan. 288, 21 P. 256, 257, 13 Am. St. Rep. 281.''

Further quoting: ''Lumberman's appliances. 'Implements' are things necessary to any trade, without which the work cannot be performed. A portable engine and boiler, with saw attachments, with which one makes his livelihood, and on which he depends exclusively therefor, and which he uses and keeps for the purpose of carrying on his business of lumberman, are 'implements,' within Mills' Ann. St., section 2562, relative to exemptions. Eckman v. Poor, 38 Colo. 200, 87 P. 1088 (citing

And. Law Dict.; Stemmer v. Scottish Union & Nat. Ins. Co., 33 Or. 65, 49 P. 588, 53 P. 498).''

And again: ''A traction engine and the saws, belt, carrier, and other appliances commonly used in connection with such an engine for sawing logs and making lumber are 'tools' and 'implements,' within the meaning of subdivision 8, section 3018, Gen. St. 1901, and are exempt from execution. Reeves & Co. v. Bascue, 76 Kan. 333, 91 P. 77, 78, 123 Am. St. Rep. 137.''

We think, construing chapter 196 in the light of these authorities, that the word ''implements'' is broad enough to embrace machines, such as tractors, graders, etc., involved in this case. Consequently, the Board of Supervisors was making contracts and voting funds for an object authorized by law, and a mere taxpayer has no authority to bring suit, and thus disturb and upset the public business and the public road system of an entire county. Suits by taxpayers must be confined to the authority conferred on them by law, and strict compliance with the law will be required of them. Such suits should not be authorized merely because a taxpayer conceives that public authorities are acting unadvisedly and improperly, or, in his judgment, illegally. But the facts which taxpayers set forth must show that the funds for the contract involved are not authorized by law. In our opinion, the authorities constituted by law, and vested with the power, are surely able and willing to bring suit in proper cases, for the correction of errors, or refusals of public authorities to follow a statutory direction.

Since in our opinion the taxpayer was not authorized to bring suit, and maintain it, it would be improper to deal with any other questions presented in this record. The judgment of the court below will be reversed, the demurrer will be sustained, and the bill will be dismissed.

Reversed and bill dismissed.