501 So.2d 1098 (1987)
CANTON FARM EQUIPMENT, INC.
v.
David RICHARDSON, J.L. McCullough, Karl Banks, J.S. Harris, Jr., Individually and in Their Capacities as Supervisors of Madison County, Mississippi; and Tubb-Williamson, Inc.
No. 57146.
Supreme Court of Mississippi.
January 14, 1987.
Rehearing Denied February 11, 1987.
*1100 Stanley F. Stater, III, Canton, for appellant.
Lee B. Agnew, Jr., Jackson, C.R. Montgomery, Rebecca B. Cowan, Montgomery, Smith-Vaniz & McGraw, Canton, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I
This appeal arises from a heavy equipment vendor's challenge to a board of supervisors rejection of his low bid for sale to the county of two backhoes. Laden within this appeal are important questions regarding subject matter jurisdiction, the adequacy of the disappointed bidder's pleadings when challenged under Rule 12(b)(6), Miss. R.Civ.P., and the standing of the plaintiff to bring the action. For the reasons explained below, we reverse and remand with directions.

II
On October 2, 1984, Canton Farm Equipment, Inc. (sometimes "Canton"), Plaintiff below and Appellant here, commenced these proceedings by filing its Complaint in the Chancery Court of Madison County, Mississippi. Canton Farm Equipment, Inc. is a Mississippi corporation domiciled and having its principal place of business on Highway 22 West in Canton, Mississippi.
The complaint asserted various illegalities regarding the purchase of two backhoes by the Madison County Board of Supervisors, one each for Districts 3 and 5. Named as Defendants were David Richardson, J.L. McCullough, Karl Banks and J.S. Harris, Jr., individually and in their capacities as Supervisors of Madison County, Mississippi.[1] These four Supervisors are Appellees here. Also named as a Defendant was Tubb-Williamson, Inc., a corporation, the apparent successful bidder. In its capacity as an unsuccessful bidder, Canton Farm Equipment demanded that the purchase of the backhoes from Tubb-Williamson be voided and that the Supervisors be directed to accept Canton's bid.
Beyond that, Canton Farm Equipment demanded that, for their misconduct in the purchase of the backhoes, the Supervisors should be assessed penalties and damages, to-wit: that the Defendants be required *1101 individually to pay back to the county the entire sum paid to Tubb-Williamson, Inc. and also be required to pay $5,000.00 in penalties, individually and on their bonds, in accordance with Miss. Code Ann. § 31-7-57 (Supp. 1985).
Apparently the Madison County Board of Supervisors had on at least four separate occasions advertised for bids for the purchase of two backhoes by the county. The last of these advertisements appears to have resulted in the submission of bids on September 14, 1984, "for the lease purchase ... of two new or slightly used rubber tired backhoe[s]."
For District 3, the bids submitted for a 36 month lease purchase contract were

Canton Ford Tractor [Canton $885.29 per month
Farm Equipment, Inc.]
Tubb-Williamson Co. $888.70 per month

Canton Farm Equipment was the apparent low bidder by some $3.41 per month.
For District 5, the bids submitted for a 36 month lease purchase contract were

Canton Ford Tractor [Canton $752.91 per month
Farm Equipment, Inc.]
Tubb-Williamson Co. $775.09 per month

Canton Farm Equipment was the apparent low bidder by some $22.18 per month.
On September 24, 1984, the Supervisors considered the bids and, upon motion duly made and seconded, determined to accept the bid of Tubb-Williamson for the purchase of each backhoe. The Supervisors' minutes acknowledged that "dollar-wise" Canton Farm Equipment "submitted the lowest bid for each backhoe" but further recited that the bid would be awarded to Tubb-Williamson for five reasons: "(1) lower maintenance costs, (2) better quality equipment, (3) operators familiar with equipment, (4) equipment demonstrated and used on jobsite and (5) more durable equipment." See Miss. Code Ann. § 31-7-13(d) (Supp. 1986). Noticeably, the minutes did not suggest that the Canton Farm Equipment bids failed to conform with specifications in the advertisement.
It was in the above setting that some eight days later, on October 2, 1984, Canton Farm Equipment commenced this action by filing its complaint in the Chancery Court of Madison County. Canton alleged that it should have been awarded the contracts on the basis that it had submitted bids which met the specifications advertised and that its prices were the lowest submitted for each backhoe. Canton also charged that the entire transaction should be declared void because the advertisement published [in accordance with which the parties submitted their bids] failed to conform with the Board's authorization. Canton attached to its Complaint a copy of the minutes of August 20, 1984, which authorize and direct advertisement for bids for purchase of the backhoes on a "cash purchase basis." For whatever reason, when published the notice called instead for lease purchase bids. It appears that no one submitted a cash purchase bid.
The Supervisors moved to dismiss Canton's complaint, asserting lack of subject matter jurisdiction in the Chancery Court, failure to state a claim upon which relief could be granted, and that Canton's exclusive remedy was an appeal to the Circuit Court under Miss. Code Ann. § 11-51-75 (Supp. 1985). On March 26, 1985, the Chancery Court entered its order directing that the entire matter be transferred to the Circuit Court of Madison County, Mississippi. In that order the Chancery Court gave as its reason for transfer "that Canton Farm Equipment, Inc. has a full and adequate remedy at law."
Once the matter was before the Circuit Court, Canton Farm Equipment amended its complaint so that it was broken down into four counts and four claims for relief. In Count 1, Canton charged that the purchase of the backhoes from Tubb-Williamson was void because the Board had authorized advertisement for cash purchase but instead the published notices had referred to lease purchase bids and in fact the bids submitted had been on a lease purchase basis. Canton demanded that the transaction with Tubb-Williamson be voided and that all monies paid on that transaction be returned to the Madison County treasury.
*1102 In Count 2, Canton charged that over a period of six months the Supervisors engaged upon a concerted course to acquire the backhoes from Tubb-Williamson in disregard for the statutorily mandated procedures whereby a county board of supervisors may purchase equipment for public use. See Miss. Code Ann. §§ 19-13-17 and 31-7-13 (Supp. 1986). The complaint charges that the Board advertised for new backhoes, that the backhoes were delivered by Tubb-Williamson for demonstration purposes in the spring of 1984, that thereafter on three separate occasions advertisements for the purchase of new backhoes were published, and that on each such occasion the bids received were rejected because Tubb-Williamson was not the low bidder. Then on the publication in September of 1984 described above the advertisement was changed to solicit bids for the county's purchase of "a new or slightly used backhoe", as this would allow purchase of the backhoes which had been delivered as demonstrators by Tubb-Williamson back in the spring of 1984. As relief Canton demanded judgment against the Supervisors requiring them to reimburse Madison County for all sums which they illegally spent and further for judgment in the amount of $5,000.00 under Miss. Code Ann. § 31-7-57 (Supp. 1985).
In Count 3, Canton charged the Supervisors with a scheme to defraud it and the other taxpayers of Madison County by purchasing the two backhoes without following the lawful guidelines required for such a purchase. As relief Canton sought assessment of civil or criminal penalties.
In Count 4, Canton set forth a claim that it had submitted the lowest and best bid and that its bid should have been accepted by the Board of Supervisors of Madison County. Count 4 also referred to a five page, fifteen paragraph section of the amended complaint entitled "Statement of Facts In Lieu of Bill of Exceptions" and claimed that such was submitted in the event that an appeal under Miss. Code Ann. § 11-51-75 be deemed its sole remedy. As relief Canton asked the court to order the Supervisors to "follow the law and purchase the two backhoes from the lowest and best bidder, Canton Farm Equipment, Inc."
In response the Supervisors moved pursuant to Rule 12(b)(6), Miss.R.Civ.P., to dismiss by reason of Canton's alleged failure to state a claim upon which relief could be granted. In due course the matter came on for hearing before the Circuit Court which held that Canton Farm Equipment, Inc., as Plaintiff, "does not have the standing to bring this suit." On December 18, 1985, the amended complaint was finally dismissed. Canton Farm Equipment, Inc. has perfected this appeal.

III
Our first questions concern subject matter jurisdiction and the timeliness of this action. When Canton brought its original action in the Chancery Court of Madison County, the Supervisors moved to dismiss for Canton had "a full and adequate remedy at law." On March 19, 1985, the Chancery Court expressly so found but, instead of dismissing, transferred the matter to the Circuit Court of Madison County.
After transfer and after Canton filed its amended complaint, the Supervisors decided that Canton's law remedy was not so adequate after all, as they then moved to dismiss for failure to state a claim under Rule 12(b)(6), Miss.R.Civ.P. Among other points, the Supervisors argued below  as they do here  that Canton's Circuit Court proceedings were not brought within the ten day time frame contemplated by Miss. Code Ann. § 11-51-75 (1972).[2] They argued *1103 this even though the original complaint was filed in Chancery Court on October 2, 1984, only the eighth day following the order of the Board of Supervisors complained of here.
The Supervisors' timeliness argument fails twofold. When an action is transferred from Chancery Court to Circuit Court, or vice versa, it is in the transferee court deemed filed as of the date of original filing in the transferor court. Miss. Code Ann. § 11-1-39 (1972); Star Chevrolet Co. v. Green By Green, 473 So.2d 157, 160 (Miss. 1985); Dixie Contractors, Inc. v. Ballard, 249 So.2d 653, 654-56 (Miss. 1971); Jenkins & Boyle v. Rogers, 184 Miss. 182, 188-89, 185 So. 603, 604 (1939).
Moreover, the amended complaint is subject to the relation back rule of Rule 15(c), Miss.R.Civ.P., i.e., an amended pleading relates back and is deemed filed on the date the original pleading was filed. See Universal Computer Services, Inc. v. Lyall, 464 So.2d 69, 74 (Miss. 1985).
Upon review of the amended complaint, we are of the view that subject matter jurisdiction lies within either court. The complaint in part seeks restitution as well as a personal judgment against the Supervisors directing that they rescind one contract and make a new one. Insofar as Canton seeks relief equitable in nature, the matter lies within chancery court jurisdiction. See Williams v. Walley, 295 So.2d 286 (Miss. 1974). The amended complaint in substantial part partakes of an action at law. The Supervisors are charged with breach of duties not unlike those generically contractual. The civil penalties sought to be assessed are generically legal relief, not equitable. For these reasons, we hold the case lies within the subject matter jurisdiction of the Circuit Court of Madison County. On remand the Circuit Court should proceed to hear and adjudge all claims and defenses without further nitpicking regarding jurisdictional questions. See Hall v. Corbin, 478 So.2d 253, 255-57 (Miss. 1985).

IV
We next consider whether Canton's complaint states a claim upon which relief may be granted. Our referent is Rule 8, Miss. R.Civ.P. We have held repeatedly that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Bias v. Bias, 493 So.2d 342, 343-44 (Miss. 1986); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985); Busching v. Griffin, 465 So.2d 1037, 1039 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499, 504-06 (Miss. 1985). Sensible application of this standard requires brief consideration of the legal parameters of the claims Canton asserts.
The process by which boards of supervisors may purchase heavy equipment for road maintenance and other related purposes is regulated by statute. Miss. Code Ann. § 31-7-13 (Supp. 1986). Purchases involving expenditures of more than $2500.00 shall be advertised for competitive sealed bids once each week for two (2) consecutive weeks in a newspaper published regularly in the county in which the governing authority is located. Miss. Code Ann. § 31-7-13(c) (Supp. 1986). The date as published *1104 for the bid opening shall not be less than five (5) working days after the last published notice. Id. The notice shall state the time and place in which the bids shall be received, list the type of equipment to be purchased, and be filed with the chancery clerk. Id.
All purchases of equipment shall be advertised on an individual purchase basis. Miss. Code Ann. § 31-7-13(g) (Supp. 1986). And, no equipment with a total acquisition cost of less than ten thousand dollars ($10,000.00) can be acquired by a lease-purchase transaction. Miss. Code Ann. § 31-7-13(e) (Supp. 1986).
Though advertisement be made in compliance with Section 31-7-13, the board is under no statutorily imposed obligation to accept any bid. Section 31-7-13(c) provides that "purchases ... may be made from the lowest and best bidder." See also Miss. Code Ann. § 31-7-13(d) (Supp. 1986).
For present purposes, it is important to understand that the board is not invariably required to accept the lowest bid. Rather our law contemplates that the board, if it accepts any bids at all, will accept the "lowest and best bid."[3] If it accepts a bid that is not dollar-wise the lowest, Section 31-7-13(d) mandates that the board shall place on its minutes "detailed calculations" and a "narrative summary" explaining why "the accepted bid was determined to be the lowest and best bid."
What is important is that the board's authority to reject bids  though broad  is not without limits. For present purposes, one such as Canton has a right that the board, if it accepts any bid at all, will accept the lowest and best bid. If Canton can establish that its bid was the lowest and best bid[4] and that the Board's action in accepting the Tubb-Williamson bid over Canton's was arbitrary and capricious,[5] Canton is entitled to relief.
Remedially, our statute law provides that any supervisor who causes a contract to be let in violation of state law may be liable individually and on his official bond for compensatory damages "in such sum equal to the full amount of such unlawful contract, purchase, expenditure or payment" and "for penal damages" not in excess of $5,000.00. Miss. Code Ann. §§ 19-13-37 and 31-7-57(2) and (3) (Supp. 1986).
We may now return to the standard by which a Rule 12(b)(6) motion to dismiss must be judged. When this is done, it seems clear that, at least in substantial part, the complaint states a claim sufficient that the motion to dismiss should have been overruled and denied. Count 1 is a claim by an unsuccessful bidder that the Defendant Supervisors violated the strictures of Section 31-7-13 as well as their own authorization in advertising for and accepting the bid of Tubb-Williamson. Canton claims that the transaction between *1105 Madison County and Tubb-Williamson should be voided and the public monies paid on that transaction returned. These allegations state a claim upon which, if Canton can prove its case, relief might be granted.[6]
Count 2 is similar. Canton alleges that the Defendant Supervisors in effect negotiated a private agreement with Tubb-Williamson for the purchase of the two backhoes and that the Supervisors pursued a six month course of conduct the effect of which was to evade the statutory requirements incident to the purchase of such equipment. Count 2 demands compensatory and penal damages under Section 31-7-57.
Count 3 charges the same general facts and enlarges into more conspiratorial terms and finally alleges that the Supervisors are guilty of fraud. Although these allegations have not yet been tested under Rule 9(c), Miss.R.Civ.P., we may safely conclude for present purposes that the most Defendants are entitled to is a greater specification of the details of the alleged fraud. Count 3 demands of the Defendant Supervisors compensatory damages and civil penalties.
Finally, Count 4 is Canton's charge that it submitted the lowest and best bid and that it was entitled to have its bid accepted. Canton further charges that the Supervisors acted arbitrarily and capriciously in rejecting its bid in favor of the Tubb-Williamson bid. Here again, we doubt it may be said that Canton could prove no set of facts within the scope of these general allegations that would entitle it to relief. Rather, Canton has stated a claim upon which, assuming it can make its proof, it may be entitled to have the transaction between the Supervisors and Tubb-Williamson voided and/or its own bid accepted.[7]
In sum, except insofar as the Amended Complaint demanded criminal penalties, the Supervisors' motion to dismiss under Rule 12(b)(6) should have been denied. In saying this, we make not the slightest suggestion how Canton's claims or the Supervisors' defenses should ultimately be decided, nor should anything said here be taken as resolving any question of fact presented in the case. Assuming it has standing to sue, a point discussed in Section V below, Canton is entitled to proceed in the Circuit Court as though the Supervisors' motion to dismiss had been denied.[8]See Whitten v. Commercial Dispatch Publishing Co., Inc., 487 So.2d 843, 846 (Miss. 1986); McCain v. Northwestern National Life Insurance Co., 484 So.2d 1001, 1002 (Miss. 1986).

V.
If we understand it correctly, the Circuit Court ultimately dismissed Canton's amended complaint because of its conclusion that Canton was without standing to maintain this action. This basis was given for the ruling, notwithstanding that the hearing was held upon the Supervisors' motion to dismiss filed under Rule 12(b)(6), Miss.R.Civ.P. The Circuit Court appears to have been of the view that Canton was a mere taxpayer and, as such, without standing to maintain this action, but as has been made clear above, this is not the case at all. Canton is a party claiming direct, adverse effect upon itself as a result of the alleged conduct of the Supervisors in purchasing the backhoes from Tubb-Williamson and in arbitrarily and capriciously rejecting Canton's bids. Without doubt, Canton had standing to maintain so much of the action as sought recision of the purchase agreement between the Supervisors and Tubb-Williamson, *1106 as well as that part of the action wherein Canton has sought damages for itself and/or a directive that its bid on the backhoes be accepted, and today we so hold.
To be sure, Canton Farm Equipment does not stop there. Canton does indeed claim the right to proceed as a taxpayer, as a private attorney general, if you will. It argues that as such it may proceed under Miss. Code Ann. §§ 19-13-37 and 31-7-57 (Supp. 1986) and obtain an order requiring the Supervisors to repay to the county the amounts expended on the Tubb-Williamson contract and, in addition, assessing them penalties up to $5,000.00. Miss. Code Ann. §§ 19-13-37(2) and 31-7-57(2) and (3) (Supp. 1986).[9]
Subsection 1 of Section 19-13-37 in its original form authorized a suit by a taxpayer against a member of a board of supervisors where the board had appropriated money "to an object not authorized by law." The Supervisors argue that this statute in no way empowers Canton to bring the present suit, for the purchase of backhoes is certainly an object which is authorized by law. But Subsection (1) was amended in 1974 so that it now provides that
The individual members of all boards of supervisors .. . causing ... any contract made or let, any payment made on any contract or any purchase made, or any payment made, in any manner whatsoever, contrary to or without complying with any statute of the State of Mississippi, regulating or prescribing the manner in which such contract shall be let, payment on any contract made, purchase made, or any other payment or expenditure made, shall be liable, individually, and upon their official bond, for compensatory damages, in such sum up to the full amount of such contract, purchase, expenditure or payment, as would fully and completely compensate and repay such public funds for any actual loss caused by such unlawful expenditure.
The 1974 amendment to Subsection (1) of Section 19-13-37 is not the most perfectly drafted we have seen. In relevant part, however, the statute is without ambiguity. It expressly authorizes enforcement via "suit in the name of the county, or in the name of any person who is a taxpayer suing for the use of the county, ... ." [Emphasis added] We consider it only sensible, not to mention grammatically and linguistically correct, to read the 1974 amendment as authorizing a taxpayer's suit against a supervisor who does not vote against a purchase of equipment for the county without complying with the statutes regulating and prescribing the manner of making such purchase. This is precisely the sort of suit Canton, at least in part, has brought as it alleges the four Supervisors named as defendants have violated the precise duties announced in Section 19-13-37. And if this were all that were before us, we would say without hesitation Canton has standing to pursue the present action. See also, Board of Trustees of State Institutions of Higher Learning v. Van Slyke (Miss. No. 56, 261, dec. Dec. 17, 1986) (not yet reported).
Following the 1974 amendment, this Court decided the case of Lewis v. Mass Appraisal Services, Inc., 396 So.2d 35 (Miss. 1981). In that case the Court quoted the amended Section 19-13-37 in full and then proceeded to restate (for what reason, we are not clear) three non-statutory prerequisites to suit announced in pre-amendment cases. Those requisites are:
1. The suit must attack an appropriation to an object not authorized by law.

*1107 2. The suit must be brought on behalf of the public and the public must be invited to join therein.
3. The public official whose duty it is to bring suit must be presented with facts sufficient to convince the legal mind that the suit should be brought.
396 So.2d at 37.
The Lewis Court did this notwithstanding the unequivocal and unqualified legislative declaration that the suit may be brought by a taxpayer for the benefit of the county.
The first requirement  that the suit must attack an appropriation of public funds to an object not authorized by law  derives from two cases decided before the 1974 amendments. See Mississippi Road Supply Co. v. Hester, 185 Miss. 839, 855, 188 So. 281, 285 (1939) and Saxon v. Harvey, 190 So.2d 901, 904 (Miss. 1966). That requirement was a faithful reading of the statute as it stood before March 26, 1974. But on that date, the statute became effectively amended so that it authorized suits in addition to those which attack appropriations to objects unauthorized by law. And, as Mississippi Road Supply states, the right of a taxpayer to bring a suit such as this "is ... such as is authorized by statute." 185 Miss. at 855, 188 So. at 185.
The amended Section 19-13-37(1) empowers taxpayers as private attorneys general and authorizes suits such as that brought here attacking the alleged action of several supervisors in their failure to comply with our statutes regarding the letting of bids for the purchase of county equipment. That the Lewis case carried forward this first requirement from the Mississippi Road Supply and Saxon cases may be explained by the fact that Lewis involved an attack primarily upon the action of the Board of Supervisors of Hinds County on grounds that it had made a contract the object of which was not authorized by law, a claim quite different from that made here. In any event, we declare that a suit under Section 19-13-37(1), and one under Section 31-7-57(2) and (3) as well, may attack an appropriation to an object not authorized by law and may charge any other matter with respect to which suit is authorized in the amended statute. Canton's suit today under scrutiny is one so authorized.
The second requisite to suit, that the suit be brought on behalf of the public and the public invited to join in,[10] is troublesome for a different reason. Here we refer to the judicial amendment to Section 19-13-37 to the effect that the suit must be brought on behalf of the public and the public must be invited to join therein. See Mississippi Road Supply Co. v. Hester, 185 Miss. 839, 857-58, 188 So. 281, 286 (1939); Saxon v. Harvey, 190 So.2d 901, 904 (Miss. 1966); Lewis v. Mass Appraisal Services, Inc., 396 So.2d at 37-38. Canton's amended complaint in part complied with this requirement in the sense that it alleges that the Supervisors were harming all of the taxpayers of Madison County and in the further sense that it demands that the Supervisors reimburse the County for sums spent without prior lawful authorization, that future obligations to Tubb-Williamson be cancelled, and that they pay to the County penalties as allowed by law. We are not, however, able to find any point in the complaint where Canton expressly invites the public to join in its suit.
Without regard to whether Mississippi Road Supply and Saxon were correct, it may not be doubted that the 1974 amendment to Section 19-13-37(1) obliterated the standing rules of those cases. Lewis inexplicably restates these judicially created (though implicitly legislatively repealed) requisites to suit. Nothing in Lewis, however, suggests why this requirement was ever imposed, why it was carried forward and restated" following the 1974 amendment, nor how it should be complied with. Taking the latter point first, Lewis, following Saxon and ignoring 1974, seems *1108 to suggest that all that is necessary is that the plaintiff state in his complaint that the public is invited to join in the suit. See Prichard v. Cleveland, 314 So.2d 729, 730 (Miss. 1975). If this is what is meant, the requirement is useless, for this is the precise means one could say with confidence is least likely to result in the public actually learning of the suit and joining in. Assuming that we really want the public to know of the case and to have a realistic opportunity to join in, some form of public notice must be given. But such is not required or even suggested in Lewis or any of the cases upon which it relies.
More fundamentally, no reason is given why we would want the public to join in the case.[11] More parties would only make the litigation more cumbersome, more time consuming and more expensive for all concerned. Beyond that, if there are those who are affected by the outcome, Defendants can suggest that they be joined in accordance with the procedure of Rule 19, Miss.R.Civ.P. Other interested parties could have joined at the outset, Rule 20, Miss.R.Civ.P., and are authorized to intervene upon remand if they perceive their interests in jeopardy and if they meet the requirements of Rule 24, Miss.R.Civ.P. Indeed, now that the joinder and intervention procedures of Rules 19, 20 and 24 are available, it seems only sensible that the public invitation contemplated by Lewis qua Mississippi Road Supply and Saxon be once and for all dispensed with. And as for the requirement that the suit be brought on behalf of the public, that requirement can be met when the substance of the action is one demanding relief for the public benefit notwithstanding the form in which the suit is brought. That requisite is well satisfied by Canton's amended complaint.
Third, and finally, the Mississippi Road Supply-Saxon-Lewis trilogy require presentation of the facts to the public official whose duty it is to bring suit  "facts sufficient to convince the legal mind that the suit should be brought." See Mississippi Road Supply Co. v. Hester, 185 Miss. at 858, 188 So. at 286. Presumably this public official would be one such as the state auditor or the district attorney. Here again we have a judicial amendment to the statute which appears in no way required or contemplated by, or necessary to, the effective operation of the statute. Section 19-13-37 expressly provides that the suit may be brought in the name of the county (presumably by the district attorney or other public officer) "or in the name of any person who is a taxpayer." No reason is apparent why the statute should not be construed as written. We certainly have before us no valid expression from the legislature that "presentation to the public official whose duty it is to bring suit" should be considered a prerequisite to a taxpayer's suit. Moreover, this third prerequisite, like the others, is stated in language so vague that it might allow the threshold thwarting of actions that on their merits might prevail. Beyond that, only with the aid of the most vivid imagination might one read the present Section 19-13-37(1) as requiring that taxpayer enforcement suits be brought or "passed upon" by any such public official.
No doubt this prerequisite was fashioned in a former time to deter frivolous lawsuits. Mississippi Road Supply Co. v. Hester, 185 Miss. at 858, 188 So. at 286. Today we have other, more realistic procedural vehicles available for that purpose. See Rules 11, 12 and 56, Miss.R. Civ.P. See also Board of Trustees of State Institutions of Higher Learning v. Van Slyke (Miss. No. 56, 261, dec. Dec. 17, 1986) (not yet reported). If the suit is wholly lacking in merit, legally or factually, it is subject to early dismissal. Rules 12(b) and 56, Miss.R.Civ.P. Where a suit such as this is filed without "good ground," for purposes of "harassment or delay," the plaintiff and his attorney may be subject to monetary or *1109 other sanctions. Rule 11, Miss.R.Civ.P. The supervisors are certainly free to raise such a Rule 11 point down the line.[12] For present purposes, all that is necessary for Canton to maintain this action is that it state a claim upon which relief may be granted. This, as we have explained in Section IV above, Canton has done.
We emphasize that the amended Section 19-13-37(1) continues to authorize suits "in the name of the county." Presumably such suits may be brought by the district attorney, Miss. Code Ann. § 25-31-11 (Supp. 1986), although he may be required to secure approval of the attorney general. Greaves v. Hinds County, 166 Miss. 89, 145 So. 900, 901 (1933). Such suits may also be brought by the state auditor and the attorney general. See State Ex Rel. Summer v. Denton, 382 So.2d 461, 462-63 (Miss. 1980); Mathis v. State Ex Rel. Summer, 379 So.2d 929, 930-31 (Miss. 1980). But the 1974 amendment unmistakably inaugurates a correlative regime of private enforcement. Canton's suit is wholly consistent with this legislative authorization.
We are influenced in this regard by Prichard v. Cleveland, 314 So.2d 729 (Miss. 1975). There four physicians, individually and on behalf of the taxpayers of Prentiss County, brought an action to enjoin the trustees of a community hospital, jointly owned by Prentiss County and the City of Booneville, from leasing part of the hospital's facilities to another private physician. The charge in the suit was that neither the owners nor operators of the hospital could lawfully expend public funds to convert a portion of the nurses' home to private office facilities for lease. The Court held that the physician plaintiffs "as taxpayers had standing to sue." 314 So.2d at 732. There is no mention in the opinion of the plaintiffs having, prior to suit, presented any public official whose duty it might have been to bring the suit with facts sufficient to convince the legal mind that suit should be brought.
A careful reading of Lewis on this third requisite to suit suggests no retreat from Prichard. Lewis does recite that the complaint failed to allege that a public official was presented with facts sufficient to convince the legal mind that suit should be brought. The Court in the next breath makes clear that this failure is not the predicate for affirmance of the dismissal of plaintiff's suit for
in any event we are of the opinion the Board did not substantially depart from the statutory methods so as to make them liable for penal damages.
Lewis, 396 So.2d at 38.
None of this means that we regard it preferable that this action proceed without the participation of any public official whose duty it may be to prosecute this suit. Upon remand notice of the pendency of the action should be given the attorney general, the state auditor and the district attorney. If any of these officials make application for intervention, we direct that the Circuit Court resolve any doubts in that regard in favor of allowing intervention. Should such intervention occur, however, neither Canton nor the public official intervening will have any authority to control the form or substance of the other's participation in the action.

VI.
In the end, we hold that Canton has stated a claim under Sections 19-13-37 and 31-7-57 upon which relief may be granted. Stanton & Associates v. Bryant Construction Co., 464 So.2d 499, 504-06 (Miss. 1985). Any relief it might obtain on that part of its complaint, of course, would be obtained on behalf of Madison County.
Canton's claim that its own rights have been violated and that it is entitled to relief arises out of a common nucleus of operative fact with the claims asserted under Sections 19-13-37 and 31-7-57. Canton's personal claims are, if nothing else, within the pendent jurisdiction of the court. That those claims might have been asserted via *1110 an appeal under Section 11-51-75 is beside the point. Because they arise out of a common nucleus of operative fact with the Section 19-13-37/31-7-57 claims, Canton's personal claims may be asserted in this action. Moreover, the substance of whatever advantages the Supervisors were entitled to under Section 11-51-75 has been made available to them inasmuch as Canton brought its action within ten days of the Supervisors' final action.
The judgment below is reversed and this case is remanded to the Circuit Court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN and GRIFFIN, JJ., concur.
WALKER, C.J., and ANDERSON, J., not participating.
NOTES
[1] The fifth supervisor, P.H. Luckett, was not named as a defendant, presumably because he voted against acceptance of the Tubb-Williamson bid. See Miss. Code Ann. §§ 19-13-37(1) and 31-7-57(5) (Supp. 1986).
[2] Miss. Code Ann. § 11-51-75 (1972), in relevant part, reads as follows:

§ 11-51-75. Appeal to circuit court from board of supervisors, municipal authorities.
Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment. If the judgment be reversed, the circuit court shall render such judgment as the board of municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities. Costs shall be awarded as in other cases. The board of supervisors or municipal authorities may employ counsel to defend such appeals to be paid out of the county of municipal treasury. Any such appeal may be heard and determined in vacation in the discretion of the court on motion of either party and written notice for ten (10) days to the other party or parties or the attorney of record, and the hearing of same shall be held in the county where the suit is pending unless the judge in his order shall otherwise direct.
[3] To be sure, there is great ambiguity latent within these two bid acceptance criteria: "lowest" and "best." The lowest bid may not be the best bid and the best bid may not be the lowest. In such circumstances satisfaction of both bid acceptance criteria may prove impossible. The statute gives no express guidance which bid may be accepted in these circumstances. To the point, the statute does not assign a primacy to one or the other where both may not be satisfied. No resolution of this statutory ambiguity should be divined here, as the point is not necessary to today's decision.
[4] See footnote 3, supra.
[5] Judicial review of such equipment purchase decisions is hardly de novo. Deference must be given the decision of the purchasing authority consistent with the lawful responsibility imposed upon that authority. Judicial intervention is wholly inappropriate merely because the court, if it were considering the matter ab initio, would have accepted a different bid. Rather, judicial intervention is appropriate only where the board's action is arbitrary and capricious or in violation of some duty imposed upon the board by our positive law or some right vested in an unsuccessful bidder. See Board of Supervisors Clay County v. McCormick, 207 Miss. 216, 227-28, 42 So.2d 177, 179 (1949); Thornton v. Wayne County Election Committee, 272 So.2d 298, 301-02 (Miss. 1973); see also Eidt v. City of Natchez, 421 So.2d 1225, 1231-32 (Miss. 1982); Brantley v. Surles, 404 So.2d 1013, 1018 (Miss. 1981); Mainstream S. & L. Ass'n. v. Washington F.S. & L. Ass'n., 325 So.2d 902, 903 (Miss. 1976); First National Bank of Vicksburg v. Martin, 238 So.2d 856, 857 (Miss. 1970).
[6] Count 1 also demands penalties as provided in Miss. Code Ann. § 31-7-55 (Supp. 1986). Those penalties, however, are wholly criminal in nature and may not be sought in this civil action.
[7] To the extent that Count 3 demands "criminal penalties," the motion to dismiss was properly granted. See footnote 6, supra.
[8] Whether Canton's action may survive a motion for summary judgment or a motion for directed verdict or for dismissal under Rule 41, Miss.R.Civ.P., at the end of its proof, are matters not before us and with respect to which we express no opinion this day.
[9] Sections 19-13-37 and 31-7-57 in the present form are in many relevant details identical one to the other. The second unnumbered paragraph of Section 19-13-37(1) is essentially the same as Section 31-7-57(2). Section 19-13-37(2) is essentially the same as Section 19-13-37(3). The operative language of these two code sections appears to emanate from Miss. Laws, 1974, ch. 444. That enactment, effective March 26, 1974, contemplated codification as Section 19-13-37. These identical provisions were added to Section 31-7-57 by Miss. Laws, 1980, ch. 440, § 15., reenacted a year later via Miss. Laws, 1981, ch. 306, § 4.
[10] In a technical sense this premise from the Mississippi Road and Saxon cases answers the standing question, for if members of the general public have standing to join in and sue, surely Canton does.
[11] As explained below, it may well be appropriate that the state auditor or the district attorney intervene. Surely this would satisfy any sensible construction of a Section 19-13-37(1) suit that the "public join in."
[12] A Rule 11 motion filed without "good ground" or for purposes of "harassment or delay" may itself be the occasion for the imposition of sanctions.