Low *et al. v.* Black Bayou Drainage District.

[65 South. 643.]

Drains. *Drainage district. Establishment. Courts. Jurisdiction.*
  Under section one of the Laws of 1912, chapter 195, providing
    for the creation of drainage districts, power is conferred upon
    the chancery court to create a drainage district only when the
    land embraced therein lies in more than one county, and where
    the only part of such district lying in another county is the
    bank of a bayou and land under a lake which cannot share in the
    benefits, the chancery court is without jurisdiction, and the fact
    that this lake and bayou can be used as outlets for the drainage
    system of the district is immaterial for the reason that the
    method by which such outlets are to be acquired is provided for
    in section 21, of the act.

Appeal from the chancery court of Washington county.
Hon. E. N. Thomas, Chancellor.

Proceeding for the establishment of the Black Bayou
Drainage District. From a decree creating the district,
W. A. Low and others appeal.

The facts are fully stated in the opinion of the court.

*Campbell & Cashin,* for appellant.

Our contention is that, having declined to establish the
district prayed for, and having eliminated from con-
sideration in the proceedings all of the lands lying in
Issaquena county, leaving for consideration as to whether
any district at all should be established, lands lying in
Washington county only, this decree was, in effect, an
order by the chancellor declining to establish the dis-
trict prayed for, and that he had no further jurisdic-
tion, because of this fact. But, if not correct in this,
then said chancellor had no authority, under the act, to
establish a district embracing lands lying in one county
only, because jurisdiction to establish a district embrac-
ing lands in one county only is vested in the board of

supervisors, and not in the chancellor. If the chancellor did not think the district prayed for, embracing lands in two counties should be established, he should have entered an order refusing to establish it. That would have ended the matter. Then, if the landowners in Washington county alone wanted to form a district, they could have proceeded in the proper way before the board of supervisors.

After the entry of this order of August 12, 1913, eliminating the Issaquena county lands from consideration in the proceedings, we moved the chancellor to dismiss the petition for lack of jurisdiction. This motion was, by the chancellor, overruled, to which the remonstrants excepted.

The chancellor's idea, at that time, as he expressed it, in overruling this motion, was because of the well-known rule of equity jurisprudence, where a court of equity had assumed jurisdiction of a cause, it would retain such jurisdiction and administer complete relief, even though, since assuming jurisdiction, the original causes of equity, because of which the court assumed jurisdiction, had ceased to exist. We reminded the chancellor that, in this case, he was not sitting as a chancery judge, and that his jurisdiction, in this case, was not the same as in a chancery cause, and that this hearing, in no way, appertained to his duties as a chancery judge, and that his jurisdiction was, in no way, affected by the general principles of equity; that this was merely a statutory proceeding heard by the chancellor, the jurisdiction to determine which might as well have been vested in the board of supervisors, as it is, or in the sheriff, justice of the peace, or any other ministerial officer, and it was upon the idea thus expressed by him that he retained jurisdiction, and he so stated in dictating his opinion in this case in the presence of the writer of this brief, which original opinion is not to be found among the original papers in this cause. But, in what

purports to be a copy of the chancellor's opinion, which we have found since in the record in this case, was sent down, he stated: "having once obtained jurisdiction, I am of the opinion that no collateral change in the boundaries of the district could deprive the court of jurisdiction. As a matter of fact, it was not the case. A portion of the lands to be drained still lies in the county of Issaquena." The chancellor is entirely mistaken in this statement that "a portion of the land to be drained still lies in Issaquena county." No land to be drained by the district established by him lies in Issaquena county. He evidently based this statement upon this sentence in his decree of August 12, 1913, eliminating the Issaquena county land and some of the Washington county lands, belonging to P. L. Mann, Greenfield Plantation, C. L. Hasie, *et al.,* from the district, viz.: "Excepting, however, the banks of the lands under Swan Lake, Straight Lake, Lake Lafayette and Steele's bayou."

It may be true that the banks of a portion of Steele's bayou, and Lake Lafayette, and the lands lying under the waters of this bayou and lake, are in Issaquena county. The chancellor retained the banks of this bayou and these lakes, and the lands lying under them, in his order eliminating the lands in Issaquena county from the district, at the suggestion of the attorney who was attempting to have this district organized, in the effort and hope that he could thereby maintain his jurisdiction, and that this court would take the position that he did not lose jurisdiction by eliminating from the district all of the lands in Issaquena county, because he excepted from the decree of eliminating the lands in Issaquena county, and because he excepted from the decree of eliminating the banks of, and lands lying under, these natural watercourses. But these are not lands to be drained. Lake Lafayette is the outlet into which the drainage of all lands lying north thereof is to be

emptied.   The outlet is first into Swan Lake; thence into Straight Lake and Steele's bayou, and thence into Lake Lafayette.  That part of Steele's bayou lying south of Lake Lafayette, which is a navigable stream, of large flowing capacity, and about three hundred feet wide, is not a part of this district according to the boundaries in the original petition.   It is not intended to drain the lands lying under Swan Lake, Straight Lake, Steele's bayou and Lake Lafayette.  This would be an impossible task.  They are merely the outlets into which the drainage will flow from Black bayou and the canals leading into Swan Lake; thence through Swan Lake, *via* Straight Lake and Steele's bayou, into Lake Lafayette; from Lake Lafayette into Steele's bayou and through Steele's bayou, into the Yazoo River, and from the Yazoo River into the Mississippi River.

It is no more contemplated to drain the lands under these streams and assess them than it is to drain the bed of the Mississippi River and assess that.  It would be about as easy to do one as the other.  It would seem that the chancellor ought to have known this.  But the decree excluded the lands of P. L. Mann and the others seem to have been rather artfully drawn with the idea of maintaining jurisdiction upon the theory that the district still embraces lands in Issaquena county.  But this is not the case.  The district established by the decree does not embrace within it "lands" in Issaquena county, within the purview of the act, merely because the drainage waters will eventually flow into Steele's bayou, which is in Issaquena county.  Unless we are correct in this, then the district also embraces lands under the Yazoo and Mississippi Rivers, and the Gulf of Mexico, because the drainage waters will eventually go there.

The statute provides that if the lands in more than one county is embraced in the proposed district, the application shall be addressed to the chancery court of either county, and all proceedings shall be had in the

chancery court, etc.  By "lands" in this sentence, is meant lands which will be benefited by the drainage scheme, and which will be assessed for the purpose of constructing the same.  Surely, it does not mean that because, in securing an outlet, it may be necessary to go beyond the limits of one county into another for the outlet, that the proceedings shall be in the chancery court when none of the lands to be drained and taxed, embraced in the district, lie in more than one county. Section 21 of the act authorizes the commissioners to condemn lands beyond the limits of the district for the purpose of securing an outlet and, of course, the commissioners must condemn, or acquire by purchase, an outlet through Swan Lake, Straight Lake, Steele's bayou and Lake Lafayette, if it becomes necessary to clear and dredge these streams.  This, the engineer, Major Gorden, testifies would be necessary.  Excepting the banks and lands lying under the beds of these streams from the lands in Issaquena county eliminated from the district, is nothing more than an abortive attempt to uphold the jurisdiction, which the chancellor clearly did not have. The chancellor's argument that he still retained the district land to be drained in Issaquena county is not correct.  Not an acre of land to be drained or taxed is in Issaquena county.

*Watson & Jayne,* for appellee.

It is contended by appellants that the order of the chancellor in eliminating from the district the lands of C. L. Hesie, *et al.,* by order dated August 11, 1913, excluded from the district all of the land in the county of Issaquena, and, therefore, the chancellor was thereafter, without jurisdiction to proceed further under the act, for the reason that the jurisdiction would thenceforward belong to the board of supervisors of Washington county.  This position is untenable.  In the first place the court had jurisdiction of the whole case as stated by

the chancellor in his opinion, and having such jurisdiction, would retain it, and in the second place he found that the boundaries thereof extended into the counties of Washington and Issaquena counties, in the following language: ''It is therefore ordered and adjudged that the Black Bayou Drainage District be and the same is hereby decreed, organized and established with the boundaries thereof extending in the counties of Washington and Issaquena, state of Mississippi.'' And after defining these boundaries, the exceptions, retains lands in both counties by the following language: ''Including all of the lands under the bank of Swan Lake; also including the lands under the banks of Straight Lake; also including the land under the banks of Steele's bayou; also including the lands under and the banks of Lake Lafayette.''

The latter lake and its banks lie wholly within the county of Issaquena and the evidence of B. B. Gordon, engineer, is to the effect that the area retained is over one thousand acres, and that it was necessary to have that territory in the district. Besides this, the territory in that county may be enlarged from time to time under section 7 of the act.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a decree creating a drainage district under the provisions of chapter 195, of the Laws of 1912. The petition prayed for the creation of a district embracing land in both Washington and Issaquena counties. When it came on to be heard the court eliminated from the district all of the land situated in Issaquena county, except the lands under and the banks of Lake Lafayette and part of Steele's bayou, so that the district when created contained no land in Issaquena county, except the banks of and land under this lake and bayou. Under section 1 of the statute here in question, power is conferred upon a chancery court to create

a drainage district only when the land embraced therein lies in more than one county, so that unless this district contains land in Issaquena county, the decree creating it is void. There is no contention that Lake Lafayette and Steele's bayou will be drained by the creation of this district, or that the land under them will share in either the benefits or burdens thereof. It is therefore not the character of land to be taken into consideration in the formation of a drainage district. The fact that this lake and bayou can be utilized as outlets for the drainage system of the district is immaterial for the reason that the method by which such outlets are to be acquired is provided for in section 21 of the statute.

*Reversed and remanded.*