KOESTLER *v.* DALLAS TANK Co., et al.

No. 40865 October 13, 1958 105 So. 2d 621

December 15, 1958 107 So. 2d 361

*Dent, Ward, Martin & Terry,* Vicksburg, for appellant.

*Brunini, Everett, Grantham & Quin, Vollor & Thames,* Vicksburg, for appellees.

HALL, J.

This suit originated before the Board of Zoning Appeals of the City of Vicksburg, Mississippi, as a proceeding to re-zone certain property in the city situated one or two blocks west of Washington Street and a short distance north of the Mississippi River Bridge, so as to change that property from a white residential zone to an industrial zone. Washington Street, some distance north of the property in question, is the main business street of Vicksburg, and also carries U. S. Highways Nos. 61 and 80. Opposite the lands here involved, Washington Street is already zoned as commercial and industrial.

The land here in question lies to the west between Washington Street and the Mississippi River.

The appellant appeared and opposed a re-zoning of the property. Despite her protests, the Zoning Board recommended the change, and the mayor and board of aldermen adopted an order making the change. Miss Koestler appealed to the circuit court.

In the circuit court the appellees filed a motion to dismiss the bill of exceptions in the case on the alleged ground that appellant has not complied with the requirements of Section 1195 of the Mississippi Code of 1942, for the reason that Honorable Pat Kelly was the Mayor and acted as President of the Board of Aldermen of the City of Vicksburg which rendered the decision or judgment attempted to be appealed from by the purported bill of exceptions; that said bill of exceptions is not signed by Honorable Pat Kelly but by Honorable John Holland who did not hold the office of mayor and was not present at the hearing which rendered the judgment attempted to be appealed from. There was also filed in the circuit court a motion to strike the alleged bill of exceptions and to finally dismiss the cause on the same ground. The ground alleged arose from the fact that the order in question was not entered by the board of mayor and aldermen until June 21, 1957, just before the expiration of the term of office of Mayor Kelly. Just two days before the expiration of his term and within the time allowed for filing the bill of exceptions, Mayor Kelly refused to sign it whereupon it was presented to Mr. Holland, the new mayor, on the day that he took office, which was still within the time provided by statute, and Mr. Holland signed it.

Section 1195 of the Code of 1942, provides that any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten days from the date of adjournment at which session the board of supervisors

or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions *which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities.*

■■■ Appellant contends that this section of the Code confers the authority to sign the bill of exceptions upon the person acting as mayor at the time the same is signed, and the appellees insist that it means that it shall be signed by the person who was acting as mayor at the time the order appealed from was made. It is patent that the appellees want us to write something into the statute which does not appear there. Under their contention, if a mayor became seriously ill or injured, or mentally incapacitated, or in the event of his death, the offended party would be practically without any remedy whatsoever, and we think that under the plain wording of the statute it means exactly what it says and that is that the person acting at the time the bill of exceptions is presented to the governing authorities is authorized to sign the same. ■■■ In fact, when Mr. Kelly's term of office expired, he was then without authority to sign the bill of exceptions or to do anything else in connection with the case.

Our view is supported by the case of West Virginia Water Service Company v. City of Beckley, et al., and we quote in full from the Supreme Court of Appeals of West Virginia as reported in 173 S. E. 785. ''Realtor, West Virginia Water Service Company, owning and operating a power plant and distribution system for the generation and distribution of electricity in the city of Beckley, seeks a writ of mandamus compelling respondents, the mayor, recorder, and common council of the municipality, to settle and sign 'bill of exceptions No. 1,' incorporating the evidence introduced before the council on an application of F. L. Conway for a franchise to construct, maintain, and operate an electric power plant

and distribution system for the generation and distribution of electric power in the city, and 'bill of exceptions No. 2,' incorporating the evidence introduced before the council upon the protest of realtor to a written contract between Consumers' Co-operative Power Company (assignee of Conway) and the city, in which the company agreed to sell to the city the power plant and distribution system which it proposes to construct under the franchise. The new set of municipal officers, elected and installed since the issuance of the rule, express their willingness to settle and sign the bills of exceptions if the court be of opinion that they have authority so to do. As we have recognized the authority of a judge to settle and sign bills of exceptions in a case tried by his predecessor (Ott v. McHenry, 2 W. Va. 73), we see no reason why the present officers of the city may not complete the unfinished business of the old by settling and signing the bills of exceptions in question. The writ may therefore issue against them.''

 It was the duty of Mr. Kelly to sign the bill of exceptions if it correctly embodied the facts when he was still acting as mayor and it was presented to him, and he was without discretion in the matter. This Court so held in the case of Polk v. City of Hattiesburg, 109 Miss. 872, 874-875, 69 So. 675.

In support of that proposition this Court cited the case of McGee v. Beall, 63 Miss. 455, in which it was said: ''The bill of exceptions in this case was prepared during the term at which the judgment appealed from was rendered, but the president of the board of supervisors for some reason not stated failed to sign it until after the adjournment of the term. The appellants, having done all that was in their power by preparing and tendering a proper bill to the proper officer, ought not to suffer by reason of his neglect to promptly sign the same.''

We do not see any material difference between the signing of a bill of exceptions by the successor to the

presiding officer when his term expires, and the successor to a circuit judge in signing the minutes when the circuit judge has died without signing them. In the case of Grant v. State, 189 Miss. 341, 348; 197 So. 826, this Court said: "If it be true that Judge Pack would have had the right to sign all of the minutes of the term on the last day thereof, or at any time before the adjournment of the term, we think that it necessarily follows that his successor in office was vested with the same power and authority where he is appointed and qualifies before the adjournment of the term commenced by his predecessor."

See also the case of Milam v. Young, 203 Miss. 387, 35 So. 2d 67.

We find that the rule in several other jurisdictions is the same as it is in Mississippi. We quote from the case of Hays' Administratrix v. McNealy in which the Supreme Court of Florida said: "The motion is to dismiss the appeal upon the ground that the case and exceptions were not settled by the judge before whom the cause was tried. The case and exceptions were settled by his successor in office, the judge before whom the case was tried having gone out of office. It is contented that this act of the succeeding judge was without authority and void; that there is no case or exceptions, and that for this reason the appeal should be dismissed. * * * * * * * It is true, that the letter of the rule requires that the judge trying the case shall settle the case and exceptions, but this rule must be held to control absolutely only in cases where it is applicable, that is, to cases where the judge who tried it is still in office. At the time this bill was signed and settled there was in existence no such officer as the judge who tried the case. A state of circumstances had arisen to which the rule was not applicable. This rule not covering the case, the question is, what is the rule of law applicable to the changed circumstances, and where was the power to set-

tle the case or exceptions to be found? or was this power and duty restricted solely to the judge presiding at the trial? It is a general rule that public duties and public powers upon which depend the enforcement of private rights, do not pass away with the official existence of a person in whom they may be vested as an officer.''

In the case of McCandless v. McWha, 20 Pa. St. Rep. 183, 184, the Supreme Court of Pennsylvania said: ''The Court never dies nor resigns, though its officers may; and its duties are neither satisfied nor extinguished by a change of its functionaries. The departing judges' unperformed duties devolve upon the successors. How shall they perform them? They have not the personal knowledge of the facts which their predecessor had; but this does not hinder them from supplying the defects according to the ordinary practice in allowing amendments. And as the bill of exceptions could be sealed at chambers, so its want may be supplied by the Court or by its presiding judge.''

In the case of Cincinnati, Indianapolis, St. Louis, and Chicago Railway Company v. Grames, 8 Ind. App. 112, 34 N. E. 618, 619, the Court said: ''A person who has been judge and presided as such at the trial of a cause, has no power to sign a bill of exceptions, and make the same a part of the record in such cause, if he has ceased to be judge.'' Four Indiana cases are cited in support of that statement.

Although a statute was involved in the case of Holstein v. Blanchette, 182 Atl. 289, the Supreme Court of Vermont reached the same conclusion that is already expressed in the above cases but in the Vermont case the Court did have the aid of several Vermont statutes which cover the situation.

 We conclude that Mr. Holland was fully authorized to sign the bill of exceptions and that the lower court erred in sustaining a motion to strike the bill of exceptions and to dismiss the appeal and the judgment of the

lower court is accordingly reversed and the cause remanded.

Reversed and remanded.

*Roberds, P. J.,* and *Holmes, Ethridge,* and *Gillespie, JJ.,* concur.

## ON SUGGESTION OF ERROR

ETHRIDGE, J.

The result in this case turned on the interpretation of Miss. Code 1942, Sec. 1195, which we think was correctly construed in our original opinion. 105 So. 2d 621. Although the statement therein that Mayor Kelly refused to sign the bill of exceptions was based only upon an averment in appellant's answer to appellees' motion to strike, and not upon the bill of exceptions, this does not affect the decision. Whether he refused or simply failed to sign under these circumstances is immaterial.

■■ The authentication of a bill of exceptions, where a judge has died, resigned, or is otherwise incapacitated, is taken care of in Mississippi by statute. Miss. Code, Secs. 1533, 1644. Hence the analogy referred to in the original opinion is not opposite to the instant facts, but that does not affect our decision which was based upon application of Sec. 1195.

Suggestion of error overruled.

*Roberds, P. J.,* and *Hall, Holmes,* and *Gillespie, JJ.,* concur.