724 So.2d 431 (1998)
David BOWLING, Emmett Eaton, Jr., Ken Ellis, John Jenkins, R.H. Bowling, Dr. and Mrs. Joe Files, Mrs. James Moss, Dr. and Mrs. William A. Rock, Jr., John Baker, and Madison County, Mississippi, Appellants,
v.
MADISON COUNTY BOARD OF SUPERVISORS, David Richardson, J.L. McCullough, Karl Banks, Marcus Sharpe, and Robert Dowdle, Individually and in their official capacity as Supervisors of Madison County, Mississippi, Appellees.
No. 96-CA-00369 COA
Court of Appeals of Mississippi.
November 24, 1998.
*432 Stanley F. Stater, III, Canton, Attorney for Appellants.
James L. Carroll, Gregg A. Caraway, Jackson, William G. Armistead, Tupelo, Attorneys for Appellees.
BEFORE McMILLIN, P.J., COLEMAN, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. David Bowling along with fellow property owners filed a complaint in the Circuit Court of Madison County against the Madison County Board of Supervisors, acting in their official and individual capacity. Bowling's complaint alleged that recent decisions by the Board violated the Madison County Zoning Ordinances. The circuit court found that Bowling failed to comply with the requirements of section 11-51-75 of the Mississippi Code for appealing a decision of the Board to the court. Consequently, the court concluded that it lacked jurisdiction to entertain the appeal and dismissed the complaint. We agree that Bowling filed the wrong pleadings, but since he timely filed he should be given the opportunity to correct his error. We reverse and remand.

STATEMENT OF FACTS
¶ 2. On May 8, 1993, Anton Klinger, president of Klinger Electric Corporation, inquired into the possibility of relocating his facility to a parcel of property he owned in Madison County, Mississippi. Duke Loden, the executive vice president of the Madison County Economic Development Authority, responded to Klinger's inquiries and informed Klinger that the parcel was zoned C-1A for business and professional offices and establishments. During this time, Klinger also discussed the possible relocation of his business with W.W. Keeler, Madison County zoning administrator, in an effort to comply with the zoning regulations.
¶ 3. On June 30, 1993, the Madison County Board of Supervisors approved the final site plan for the construction of the proposed facility. The Board also approved the C-1A zoning classification with a variance to Klinger to permit light manufacturing. Following the Board's approval, the requisite building permits and other necessary documents were issued to Klinger. On July 14, 1994, Bowling complained to the Board about Klinger's alleged violations of the zoning ordinances. The Board appointed a committee to study Bowling's concerns about the Klinger facility. On September 22, 1994, the committee advised the Board that based upon a personal on-site inspection of the Klinger facility and a review of the zoning ordinances, the present use of the facility was allowed under the C-1A zoning classification. The committee determined that no light manufacturing had or was occurring on the property since the issuance of the building permit in August of 1993. Although the committee found that the facility was allowed under the zoning regulations, the committee noted that it was concerned with the Board's granting of a variance for light manufacturing. The committee recommended that the Board grant a conditional use for light manufacturing to the Klinger facility in anticipation of the corporation's future use of the facility.
¶ 4. Following the Board's acceptance of the committee's report on October 7, 1994, a petition for special exception to allow light manufacturing at the Klinger facility was *433 filed on October 14, 1994. Three days later Bowling filed a complaint "in the nature of a bill of exceptions" against the Board in the Madison County Circuit Court. The complaint alleged that the Board approved the variance on the property without giving the public notice or without holding a public hearing. Bowling also asserted that the Klinger facility was not compatible with the facilities allowed under the C-1A regulation. Finally, Bowling argued that the actions of the Board deprived him and fellow property owners of their property without due process of law.
¶ 5. On November 14, 1994, the Board set a public hearing to be held on December 5, 1994, to consider the application for special exception to Klinger to allow him to operate a light manufacturing facility on the property. During the public hearing, Klinger presented a videotape of the facility and described the proposed operations of the facility. The Board then heard objections to the facility from several property owners, represented by their attorney, relating to the zoning classification and the proposed use of the property for light manufacturing. At the conclusion of the hearing, the Board adopted an ordinance which enacted the special exception. Subsequently, Bowling filed a motion to amend the complaint to include the actions taken by the Board at the hearing. Bowling alleged that the Board's actions at the hearing were also improper.
¶ 6. On January 13, 1995, the Board filed a motion to dismiss the complaint for lack of subject matter jurisdiction. The motion stated that Bowling failed to comply with the statutory requirements of Section 11-51-75, governing an appeal from a decision of the Board to the circuit court. The court found that Bowling failed timely to file a bill of exceptions with the court, and subsequently, the court dismissed the complaint for lack of jurisdiction. Bowling has appealed.

DISCUSSION
¶ 7. The controlling issue is jurisdictional. The court held that no jurisdiction existed since Bowling failed within 10 days of each disputed action by the Board to take an appeal and file a bill of exceptions. Such a procedure arises under the following statute:
Appeal to circuit court from board of supervisors, municipal authorities.
Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment....
Miss.Code Ann. § 11-51-75 (1972). At its simplest, a bill of exceptions is the citizen's statement of the facts that the president of a local Board accepts or partly disputes after review and any mutually acceptable revision. Bowling's response to the Board's argument is in the alternative: first, the statute is not the limit of the right to have this action judicially reviewed, and second, the statute is antiquated and has been replaced by the Rules of Civil Procedure.
¶ 8. We take the second point first. The rules of procedure, both for trial and appellate courts, do not replace the jurisdictional statutes. The right to appeal is governed by statute. The supreme court has continued to apply the just-quoted statute for appeals from municipal and county governing authorities. McIntosh v. Amacker, 592 So.2d 525, 526 (Miss.1991). Thus Bowling must comply with the statute to the extent it is applicable.
¶ 9. What is the minimum required to comply with the statute is a more difficult issue. The same attorney for the complainants and many of the same supervisors as defendants were involved in one of the most significant precedents regarding appellate review of *434 board of supervisor action. Canton Farm Equipment v. Richardson, 501 So.2d 1098 (Miss.1987). Not just coincidentally it would be supposed, that attorney followed a similar procedure in the present suit as succeeded in Canton Farm Equipment. There an unsuccessful bidder for the sale of heavy equipment filed a complaint in chancery court to set aside the winning bidder's contract. The supreme court found that filing a complaint either in chancery or circuit (though circuit ultimately was the correct court) was adequate if the complaint was filed within 10 days of the board action. Id. at 1102-03. The basis for relief was that the supervisors had ignored proper bid procedures, had not awarded to the lowest bidder, and were engaged in fraud. Id. at 1104-05. Damages against the supervisors on their bonds were also sought. No agreed bill of exceptions was filed, but instead the complaint contained a "`Statement of Facts In Lieu of Bill of Exceptions' and claimed that such was submitted in the event that an appeal under Miss.Code Ann. § 11-51-75 be deemed its sole remedy." Id. at 1102.
¶ 10. The only discussion of the possible jurisdictional defect was a summary dismissal of the concern. The board argued that the appeal did not comply with Section 11-51-75 "even though the original complaint was filed in Chancery Court on October 2, 1984, only the eighth day following the order of the Board of Supervisors complained of here." Id. at 1103. The ten day limit was met because even if the complaint (not an appeal) was filed in chancery instead of circuit court, a statute requires that the original filing date control when a case is transferred between the two courts. Id., citing Miss.Code Ann. § 11-1-39 (1972). Then the court proceeded to discuss the case as if it were a proper original action in circuit or chancery, even though the complaint/appeal sought a review of the propriety of the supervisors' awarding of a bid at its meeting. The supreme court never explicitly held that the case was a flawed but adequate appeal under section 11-51-75 or instead was an original action. The only ten day requirement, though, is for appeals. On remand the circuit judge was to "hear and adjudge all claims and defenses without further nitpicking regarding jurisdictional questions." Canton Farm Equipment, 501 So.2d at 1103. A difficult jurisdictional puzzle, perhaps not a "nitpick," is at the center of the present and many cases. All that can be said is that the jurisdictional issues were posed in Canton Farm Equipment, but not fully explained.
¶ 11. The more traditional analysis is that injunctive or other equitable relief as sought in Canton Farm is unavailable if there exists an adequate remedy at law such as an appeal. That was the holding in one case, in which a supervisor who was removed from office by a vote of the other four members of the board, sought an injunction to return him to office. Moore v. Sanders, 558 So.2d 1383, 1384 (Miss.1990). The court found that the availability of an appeal under section 11-51-75 precluded the bringing of an original action for injunction. Id. at 1385. Unfortunately for the complaining ex-supervisor, the court later found that he had not timely filed an appeal and he lost in that second suit as well. Moore v. Sanders, 569 So.2d 1148, 1149-50 (Miss.1990).
¶ 12. In addition to Canton Farm Equipment, as recently as August 13, 1998 the supreme court again permitted this attorney, contesting the actions of a different board of supervisors, to continue his appeal despite that he began litigation with a complaint (filed within 10 days of the disputed action), then amended it to include as he did here a "Statement of Facts in Lieu of Bill of Exceptions." Stockstill v. Hales, ___ So.2d ___, 1998 WL 470119, No. 97-CA-00203-SCT (Miss. 1998). The court mentioned that the board objected to jurisdiction since no agreed bill of exceptions had been filed. The appellant's response was that he was seeking a declaratory judgment that the Board had failed to comply with the bid laws because it failed to follow the statutory procedural requirements for accepting something other than the lowest bid. Miss.Code Ann. § 31-7-13(d)(i) (Supp.1998). The supreme court did not analyze the Section 11-51-75 issue, proceeded to consider the appeal on the merits, and upheld the Board's action which *435 made the procedural issue unimportant to the result.
¶ 13. In the present case, Bowling's first request for relief was for "a declaratory judgment" that light manufacturing could not occur in a C-1A zone, and the second was that the court find that Klinger could not continue to use the property as he had been. If merely asking for a declaratory judgment permits a party to avoid the effect of a failure to appeal from a lower tribunal's decisions, then the requirement of an appeal is largely negated. Declaratory judgments are alternative procedures that permit adjudications of rights when actual controversies exist, but they have not reached the stage at which suits for damages or injunctive relief would normally be brought. M.R.C.P. 57 cmt. A Rule 57 declaration is also an alternative to injunctive relief. Id. What it has never been held to be is an alternative to an appeal from a lower tribunal's actions. To hold that it may be, permits a de novo trial under Rule 57 instead of a deferential review on the record.
¶ 14. More importantly, when someone fails to appeal a final judgment, that decision become res judicata. A declaratory judgment or any other remedy is irrelevant if the matter has been finally resolved in another forum. The procedural bar can be raised by the adverse party when a separate proceeding is commenced. Even when a specific statutory right like a quo warranto suit is involved, the court has said that an appeal is the sole remedy. Moore, 569 So.2d at 1149, 1150 (Robertson, J., dissenting); see also Barlow v. Weathersby, 597 So.2d 1288, 1293 (Miss.1992).
¶ 15. We hold that both Canton Farm Equipment and Stockstill necessarily found that the procedure followed was the equivalent of an appeal, since both suits permitted direct attacks on a board's decision that had to be brought in an appeal and not in an original action.
¶ 16. If Bowling failed to appeal but has raised issues that were properly the subject of an appeal, then he is barred from pursuing them. However, if some or all of the case that he has brought was not something that was properly the subject of an appeal from the Board, or in the alternative if what Bowling filed can be considered an appeal, then he may proceed.

1. Are these issues ones that should have been appealed?
¶ 17. An appeal contests the validity of a lower tribunal's decision. If it is the Board who erred, then court review of that error must be sought. However, if Bowling is arguing that others are failing to restrict themselves to the authority granted by the Board, then that might be the basis for separate litigation. Significantly, the only defendants are members of the Board. Klinger was not sued.
¶ 18. When Bowling's first complaint was filed, well more than 10 days had passed from the Board action that was then the center of the dispute, the granting of a variance on June 20, 1993. Since Bowling argues that this action occurred without proper notice given, that would be a basis to argue that an appeal within 10 days was not a requirement. A zoning ordinance adopted without proper notice is void. Brooks v. City of Jackson, 211 Miss. 246, 254, 51 So.2d 274 (1951). In Brooks, the court permitted an original action to be pursued despite the City's argument that "administrative remedies available to the appellants were not availed of or followed ...." Id. at 251, 51 So.2d 274. If a local government failed to give proper notice, a party who wishes judicial review of the acts once he discovers that they have occurred is unlikely to be able to make a timely appeal.
¶ 19. The first time after June 30, 1993 that the Board addressed problems with Klinger's use occurred once Bowling raised a complaint with the Board on July 14, 1994. On September 22, 1994, the Board appointed a committee to determine whether Klinger's use was permissible in a C-1A zone. The committee reported that the use was not clearly improper, but that a better authorization would arise from a special use exception. On October 14 a petition was filed with the Madison Board of Supervisors by the Board itself to grant a special exception for light manufacturing at Klinger's facility. On October 17, Bowling brought suit. On November 14, the Board gave notice that it would consider *436 the petition at a meeting on December 5. At that meeting the special exception was granted. On December 15, within 10 days of the order, Bowling filed a motion seeking leave to amend his complaint to include these additional actions.
¶ 20. If nothing further had been done by the Madison Board after June 30, 1993, an aggrieved person could seek a declaratory judgment that Klinger's use of his property was exceeding his authority in a C-1A zone even with a variance and that he should be enjoined from continuing that use. Id.; Travis v. Moore, 377 So.2d 609, 612 (Miss.1979) (seeking to enjoin nuisance). Bowling made this kind of argument in his complaint of October 17, 1994, but it was the members of the Board who were the defendants. Bowling sought a declaratory judgment that Klinger's use was improper, but did not join Klinger as a necessary party. If the Board should not have given Klinger authority to conduct certain operations, then because of the alleged failure of notice that could be contested. If Klinger was a necessary party, then his joinder could have been requested.
¶ 21. As Bowling admitted in the proposed amendment to his complaint, the case changed radically with the notice of the special exception. Once that exception was granted after proper notice was given, the variance was no longer the primary support for Klinger's use of the property. Bowling was able to participate in the Board proceedings on the exception. In the amendment, Bowling argued that the Board failed to accept his argument that Klinger's use was incompatible with C-1A zoning, and that granting a special exception was "illegal, arbitrary and capricious." Additional allegations appeared that the supervisors were guilty of knowing and fraudulent dereliction of their duties.
¶ 22. These allegations are the kind that can be brought on a direct appeal from an agency's final judgment. Bowling received notice of a special exception, appeared and protested at the hearing, but failed to convince the Board to deny the proposed exception. A reviewing court's obligation on appeal regarding zoning issues that are adjudicative in nature (as opposed to decisions to zone or rezone, which are legislative) is to determine whether the applicants proved by a preponderance of the evidence that they meet the conditions for a special exception. Barnes v. Board of Supervisors of DeSoto County, 553 So.2d 508, 510-11 (Miss.1989). If the "Board's decision is founded upon substantial evidence," and is not arbitrary or capricious, it is binding on the court; the same standard applies to reviewing administrative agency adjudicative decisions. Id.
¶ 23. Thus Bowling had the right to bring the claims on an appeal. He is not arguing that Klinger has gone beyond the authority granted him by the Board, but is saying the Board did not have the right to grant Klinger this authority. If this action cannot be considered an appeal, the decision of the Board on the special exception has become final and is res judicata.

2. Is this the equivalent of an appeal?
¶ 24. We have determined that the issues raised here must be presented in an appeal from the Board's decision. Whether this action can be considered an appeal with the wrong caption on the documents is our next task. We first break the statute down into its component parts. The present version of Section 11-51-75 provides the following:
1) a person must be aggrieved by a decision of the local governing authority;
2) within ten days from the session of the board there must be an appeal;
3) a bill of exceptions that embodies the facts, judgment and decision must be prepared by the aggrieved party, presented, and "shall be signed" by the president of the governing body;
4) the clerk of the city or county transmits the bill of exceptions to the circuit court;
5) the circuit court reviews the decision as an appellate court.
Miss.Code Ann. § 11-51-75 (1972).
¶ 25. The central questions that face us are what has to be done, by whom, and when?
¶ 26. Bowling timely filed a document in circuit court, but it definitely was not a bill of exceptions. Does the bill of exceptions itself have to be filed within 10 days, or may *437 something else be filed first and the bill of exceptions presented later? The precise statutory language would not bar the use of two separate documents: the first would signify the act of appealing while the second would "embody the facts, judgment and decision...." Id. In very few of the precedents on the bill of exception requirement has there been a suggestion that two documents were involved. Even so, in at least one appeal the court mentioned compliance with the statute by attaching the bill of exceptions to the notice of appeal. Cox v. Board of Supervisors of Madison County, 290 So.2d 629, 630 (Miss.1974).
¶ 27. The importance of this question is that the statute provides that the person aggrieved "may appeal within ten" days, while no time limit appears in the later clause of the same sentence that refers to preparation of the bill of exceptions. If the bill of exceptions is not the necessary document to commence the appeal, then its preparation may not be critical to meeting the jurisdictional time requirements. First, the bill of exceptions serves as the record. The record is not what in a normal appeal must be filed simultaneously with the notice of appeal. Secondly, since the bill of exceptions requires the signature of an official who personifies the governmental body whose actions are being condemned by the aggrieved party, delays in reaching agreement on the record can be expected. The critically short ten day time frame suggests that even slight delay may be procedurally fatal.
¶ 28. Supreme court procedural statutes have never required that all necessary documents for an appeal be filed simultaneously. A bill of exceptions was formerly among the possible documents in appeals from circuit court to the supreme court in a normal civil case. Such a bill of exceptions was one means to enumerate "the matters of law wherein [the circuit judge] is supposed to have erred...." Miss.Code § 974 (1906). The bills became part of the record on appeal, had their own time deadlines for being signed as will later be discussed, but were not the initial document to perfect the appeal. An appeal could be initiated by petition and then later a bond had to be filed. Miss.Code §§ 40 & 45 (1906). Determining whether an appeal was timely required looking at the earliest of the following: the petition for appeal, a bond, or a transcript of the record. Miss.Code § 47 (1906). Therefore, when a bill of exceptions was submitted in a normal civil case appeal, it was not the evidence that an appeal was or was not timely filed; these other filings were.
¶ 29. Regardless of such general statutes, the legislature could make the bill of exceptions the sole document in an appeal from a board of supervisors and require that it be filed within the period for appeal. To understand the relationship between the filing of the bill of exceptions itself and the meeting of jurisdictional time requirements, we examine the evolution of the statute.
¶ 30. The earliest version of the statute was adopted when the county governing board was called a "board of police":
It shall and may be lawful for all persons who feel themselves aggrieved by the judgment of the board of police of any county, to appeal by bills of exception or certiorari to the Circuit Court of his county; which appeal shall be taken during the term of the board at which judgment is entered, or at the next succeeding regular term thereof, and not after.
Miss.Code ch. XXXVIII, § 41 (1840). "Certiorari" was a significant option. "An appeal by bill of exceptions would necessarily confine the revising Court to matters of law arising upon the exceptions." Yalabusha County v. Carbry, 11 Miss. 529, 548 (1844). The added remedy of appeal by certiorari implied a right to a trial de novo. Id. at 548-49. That meant new evidence could be admitted. Deberry v. Town of Holly Springs, 35 Miss. 385, 388 (1858).
¶ 31. A revision of this statute eliminated trial de novo certiorari review.[1]
Any person who may conceive himself aggrieved by any judgment or decision of the board of supervisors, may appeal to the next term of the circuit court of the county, *438 and may embody the facts and evidence in a bill of exceptions, which shall be signed by the president of the board; and it shall be the duty of the board to grant such appeal when demanded; and the clerk shall transmit the proceedings to the circuit court, on or before the next succeeding term; and the court shall hear and determine the same on the case as presented by the bill of exceptions, as an appellate court, and shall affirm or reverse the judgment....
Miss.Code ch. LIX, art. 33 (1857). Thus most of the principal elements of the procedure that still apply today have been in place at least since 1857.
¶ 32. Somewhat later the statute was expanded to apply also to municipalities and the obligation of the clerk was modified to require that the bill of exceptions be transmitted on or before the first day of the next circuit court term or "at once" if the court term had already commenced. Miss.Code § 79 (1892); Miss.Code § 80 (1906). The only time limit explicit in the statute related to when the clerk of the board had to submit the bill of exceptions to the circuit court. However, the following case law found an implied deadline for filing a bill of exceptions with the board.
¶ 33. An aggrieved party presented a bill of exceptions on the day of the board action, but it was not signed then or ever. McGee v. Jones, 63 Miss. 453, 455 (1886). The court analyzed a related statute that authorized bills of exception to be presented to circuit judges as part of an appeal of a normal civil case. Id.; Miss.Code Ann. § 11-7-205 (1972), repealed 1991 Miss. Laws ch. 573, § 141. In a then-recent decision, the court had held that the judge must sign the bill within a reasonable time, "and we know no more satisfactory method of determining what is a reasonable time that the limit indicated by the terms of court.... Nothing short of an uncontrollable necessity could excuse a longer delay." Rankin County Savings Bank v. Johnson, 56 Miss. 125, 128 (1878). The court then held that a signature in vacation after the term of court at which the trial occurred would be permissible if the parties agreed and this was certified by the court. Id. In McGee the court used the Rankin County case by analogy to hold that a local governing board must be presented the bill during the term at which the action was taken, unless by agreement of the parties the bill could be signed later. McGee, 63 Miss. at 455. The mere filing of an unsigned bill did not suffice. Id.; accord, Hathorn v. Morgan, 107 Miss. 589, 594-95, 65 So. 643, 644 (1914).
¶ 34. This was clarified by a companion case that was based on a bill of exceptions that was presented before the session of the board had terminated, but the president did not sign it until the day after the session ended. McGee v. Beall, 63 Miss. 455, 457 (1886). The court held that the aggrieved parties after "having done all that was in their power by preparing and tendering a proper bill ... ought not to suffer by reason of [the president's] neglect" in signing. Id. The appeal was allowed. In neither case was there an agreement to permit a signature after the board adjourned. The main distinction between them is that in one there never was a signature and in the other the signature came only a day after the session of the board.
¶ 35. Various other cases addressed failures of the president of a board to sign a bill. When an accurate bill of exceptions is presented, it is the duty of the president to sign it. Polk v. City of Hattiesburg, 109 Miss. 872, 874-75, 69 So. 675, 676 (1915), reaffirmed in Koestler v. Dallas Tank Co., 234 Miss. 104, 109, 105 So.2d 621, 623 (1958). A writ of mandamus can be issued if the circuit court, on contested facts, finds that the bill was correct. If the board president admits the accuracy of the bill of exceptions, then no signature is necessary. Id. If the president believes that some defect exists, the aggrieved party is entitled to have the specific defect explained so that a correction may be made. Reed v. Adams, 236 Miss. 333, 341, 111 So.2d 222, 225 (1959). For the mandamus action to provide meaningful relief, the delay past ten days in getting the mandamus ordered should not affect the timeliness of the appeal so long as the bill of exceptions was presented before ten days.
*439 ¶ 36. This impractical requirement of what often was the need for an immediate bill of exceptions was modified in 1940. Thereafter, the appeal must be filed "within ten days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment"; the facts were to be embodied in a bill of exceptions; the clerk of the board was to transmit the bill at once if the circuit court were then in session, or if not then on or before the next circuit court term. 1940 Miss. Laws ch. 245. An extra paragraph was added to the statute in 1955 regarding bond issues, but that is not relevant here. 1955 Miss. Laws ch. 33. Another change was made in 1962 when the clerk of the governing board was required to transmit the bill of exceptions to the circuit court "at once," without a distinction any longer being drawn depending on whether the court was then in a term or not. 1962 Miss. Laws ch. 240.
¶ 37. What is evident from this review is that the bill of exceptions itself has been the document that in practice starts the appeal. Getting it signed immediately was a significant problem under the first version of the statute. That led to the right of an aggrieved party to get an extension if the governing body would agree. With a few variations, such as an allegation by the president of the board that the bill contained errors without explaining what the errors were, the result of neglecting to file a signed bill of exceptions within ten days was that the appeal was dismissed.
¶ 38. One relatively recent appeal has reinvigorated this proposition that the board can agree to permit a late-filed bill of exceptions. Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736, 744 (Miss.1980). In that appeal the bill of exceptions ultimately was 250 pages long. Since it was clear from the beginning that it would be difficult to prepare a bill within 10 days, the board entered an order before the ten days expired that extended the time. Id. The petitioners had filed their notice for appeal with the board before the ten day deadline. Id. at 741. The supreme court found that the extension was valid. In doing so it contrasted an earlier case in which the appeal was dismissed when the bill of exceptions was not presented to the president of a board until after the 10 days had expired. Shannon Chair Co. v. City of Houston, 295 So.2d 753, 754-55 (Miss.1974). The court explained that in Shannon "no request was made for an extension of time within which to prepare a bill of exceptions...." Cloverleaf Mall, 387 So.2d at 744.
¶ 39. This means that the court has recognized and responded to the fact that a good faith effort by both sides to reach agreement on a record can be time-consuming generally, but especially after a complicated or lengthy board of supervisor or municipal board hearing. Cloverleaf permitted a bill of exceptions to be filed after ten days if agreement on the record was reached before the ten days; the significance of the notice of appeal being filed with the board before ten days was not directly considered. A long discussion of a similar case appeared. Id. at 743-44 (quoting Board of Supervisors of Marshall County v. Stephenson, 160 Miss. 372, 134 So. 142 (1930)). That appeal also involved an aggrieved party who on the day of the disputed action orally gave notice of appeal. Stephenson, 160 Miss. at 378, 134 So. 142. The board and the protesters agreed that a bill of exceptions could be prepared, presented and signed out of time. Id. at 380, 134 So. 142. Applying McGee v. Jones, the Stephenson court found this agreement was valid. Id. at 381, 134 So. 142.
¶ 40. Another precedent in which the court revealed a flexible approach to bills of exception first held that it was mandatory that the circuit judge himself sign the bill in a normal civil case appeal. Rankin County, 56 Miss. at 126. "If, however, it appeared that the bill had been seasonably signed [by the wrong person], and was in other respects regular, we should feel constrained" not to dismiss the appeal because an attorney serving in the case as a special judge signed the bill. Instead, another bill with the correct judge's signature could be substituted. Id.
¶ 41. We now turn to recent case law in which the supreme court has ordered an appeal dismissed because of defects in the bill of exceptions. On one appeal the aggrieved party filed a notice of appeal on the tenth day from the board action, but no bill *440 of exceptions was ever presented. Moore v. Sanders, 569 So.2d 1148, 1149 (Miss.1990). The board explicitly consented to the appeal and filed a transcript of the hearing and the board's order with the circuit court two and a half months later. Id. The supreme court held that there was no authority for the trial court to consider the appeal. Id. at 1150. The court relied upon case law that the ten day time period was mandatory, and implicitly assumed that it was the bill of exceptions that had to be filed. Id. at 1149.
¶ 42. In a 1991 case, a notice of appeal was mailed to the clerk of a board of supervisors on the seventh day after the disputed action, along with a request that the proceedings be transcribed. McIntosh v. Amacker, 592 So.2d at 526. The notice was not received and filed until the eleventh day and no bill of exceptions was ever filed. The court held that "absent a bill of exceptions, the Circuit Court is not vested with subject matter jurisdiction over the appeal." Id. at 527. In a case cited in Amacker, the court repeated a frequent statement that the bill of exceptions is necessary because otherwise "there is no means of determining whether or not the judgment" below should be affirmed or reversed. Cox v. Board of Supervisors of Madison County, 290 So.2d 629, 630 (Miss. 1974). This obvious consideration does not mandate that the "means of determining" what occurred below has to be the document that is filed by the tenth day. Most appellate records are filed after jurisdictional time requirements have been met. In another early case in which the need for the bill to serve as the record was explained, the court stated that an "appeal without bill of exceptions is irregular and void," but the court did not hold that it was the bill that had to be filed by the deadline for appealing. Yandell v. Madison County, 79 Miss. 212, 213, 30 So. 606, 607 (1901).
¶ 43. As already discussed, the former requirement that the bill be signed before the adjournment of the governing body was a gloss added to a statute that was silent on the point. The only deadline mentioned in the earliest version of the statute is the one for the clerk of the local governing board to transmit the appeal to the circuit court. That was either "at once" or before the next term of court. Even though the deadline for appealing is mandatory, that begs the question of whether it is the bill of exceptions that has to be prepared in order to meet the deadline. Most cases have nonetheless held that to be the case. A few have used the phrase that the "notice of intent to appeal given within the ten day period added nothing to its attempt to appeal in this case." Moore v. Sanders, 569 So.2d 1148, 1149 (quoting Shannon Chair, 295 So.2d at 754).
¶ 44. After this review, we find that the supreme court has with only a few exceptions held that the bill of exceptions itself must be filed within ten days. It is significant, therefore, that the court held in Cloverleaf Mall that the parties have the right to agree to a later date for preparing the bill. The rule has long existed that a court does not have the power to waive delays in meeting statutory time deadlines for appeals. LUTHER T. MUNFORD, MISSISSIPPI APPELLATE PRACTICE, § 6.6 (1997); M.R.A.P. 2(a)(1). A reasonable understanding of Cloverleaf Mall then, since mandatory filing requirements cannot be waived, is that the ten-day time to appeal has been satisfied by something else. Both in Cloverleaf Mall and in the precedents upon which it relied, notice in another form had timely been given to the governing body that an appeal would be taken.
¶ 45. There is not much flexibility in these cases, but there is some. We seek within these precedents the jurisprudential support for our conclusion that Canton Farm Equipment and Stockstill must have been considered appeals. Bowling in this case, as did the plaintiffs in Canton Farm Equipment and Stockstill, timely filed. What was not done in any of these two precedents or here was to label the pleadings correctlythey should have said "Appeal" instead of "Complaint"and to attach what is the record for the appeal, namely, the bill of exceptions signed by the president of the Board. We find ourselves obligated to reach the same result on the same facts if it is possible without doing violence to procedural rules that for some reason were not discussed in either case.
*441 ¶ 46. We first find that similar defects do not terminate cases in two other kinds of proceedings. If a complaint is dismissed for certain kinds of defects, the errors can be corrected:
Commencement of new action subsequent to abatement or defeat of original action. If in any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after verdict for the plaintiff, the judgment shall be arrested, or if a judgment for the plaintiff shall be reversed on appeal, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit, or after reversal of the judgment therein, and his executor or administrator may, in case of the plaintiff's death, commence such new action, within the said one year.
Miss Code Ann. § 15-1-69 (Rev.1995) (emphasis added). The failure to label a pleading correctly would undoubtedly be a matter of form. Our current procedural rules require certain documents to be attached to pleadings, but failure to attach can be corrected by amendment. M.R.C.P. 10(d) & 15(a). This appeal, however, was not an original action to which the statute or rules apply.
¶ 47. Another statute requires that an opportunity be given to rectify formal defects in appeals:
Appeal not to fail for certain things.
An appeal to the supreme court shall not be dismissed for want of jurisdiction because of a defect in the application for appeal, or in the bond, or because an insufficient amount was paid to prepay the costs or because of any failure by an officer to comply with the requirements of law in reference to appeals; but all defects and irregularities may be cured by amendment so as to perfect the appeal and obtain the judgment of the supreme court in the case; but the court may dismiss an appeal for a failure of the appellant to do, within a reasonable time, what may be necessary to perfect his appeal.
Miss.Code Ann. § 11-3-5 (Rev.1991) (emphasis added); First National Bank of Vicksburg v. Cutrer, 190 So.2d 883, 885-86 (Miss. 1966).
¶ 48. These statutes do not permit waiver of untimely action, but all matters of form are subject to amendment. Unfortunately for Bowling, neither statute applies here. These defects occurred in pleadings filed in the circuit court, but Section 15-1-69 applies to an "action, duly commenced," i.e., a complaint properly filed and not an appeal. Section 11-3-5 applies to appeals to the supreme court and not to the circuit court. A supreme court rule permits waiver of compliance with any appellate rule except for the timeliness of the appeal, M.R.A.P. 2(a)(1) & (2), but that rule only applies to appeals to this Court and to the supreme court. M.R.A.P. 1.
¶ 49. Thus Section 11-51-75 that makes a traditional trial court into an appellate court for appeals from local governmental action, falls outside the established statutes and rules that permit formal matters to be corrected. Had this been a proper complaint in instead of an appeal to circuit court, Bowling would be entitled to correct a formal defect of his suit. Had this been an appeal to the supreme court instead of an appeal to circuit court, matters of form also could be corrected.
¶ 50. To reiterate, an appeal from the Board must be filed within 10 days and a bill of exceptions must be submitted. Miss.Code Ann. § 11-51-75. To comply with those obligation, Bowling filed, within 10 days of the Board's granting a special exception, a motion to amend his pending complaint. That amended complaint raised the issues that would have been raised by an appeal. Thus the defects in Bowling's procedure were not on the timeliness or on the issues raised, but on the label, "complaint" instead of "appeal," and on the absence of a bill of exceptions.[2] *442 The two statutes that we have cited indicate that the legislative branch does not wish that matters of form will terminate a court's ability to consider the rights of parties. The appellate and civil trial rules indicate that the supreme court follows the same principle.
¶ 51. In at least the two occasions of Canton Farm Equipment and Stockstill, the supreme court has not permitted the absence of bill of exceptions to cause a dismissal. In each case the failure to file a bill was expressly raised by the county. More frequently, omitting a bill of exceptions has caused dismissal. E.g., Moore, 569 So.2d at 1149-50. Weaving the two lines of cases together, joining strands from other precedents regarding the power of the courts to establish rules of procedure, Newell v. State, 308 So.2d 71, 78 (Miss.1975), and finally giving color to the legal fabric with the policy expressed in statutes and appellate rules that matters of form should be amendable, we reverse the circuit court's dismissal of the appeal. Bowling must file a bill of exceptions if he wishes to proceed and should promptly prepare and submit one to the county. If such a bill approved by the county is then filed in this action in circuit court, the appeal can proceed. By analogy we hold that Bowling has the right "to correct promptly any deficiency," but if not corrected "the appeal will be dismissed" by the court. M.R.A.P. 2(a)(2).
¶ 52. Bowling made a timely filing for judicial review of the Board's actions in granting a special exception. The form of his pleading and the attachment that was to made to it were erroneous. If these errors are corrected then the case can proceed. This holding is not entirely consistent with every precedent, but it is a balancing of what at times was a different emphasis in different opinions, while remaining faithful to the rules that govern appeals. What we hold is that the procedures for Section 11-51-75 appeals are controlled by that statute, but that the principles expressed in the rules of civil and appellate procedure, and not just incidentally by the statutes requiring that complaints and appeals not fail for formal defects, control the interpretation of those procedures. That appears to be the unstated premise both of Canton Farm Equipment and Stockstill.
¶ 53. Motions were made in circuit court to permit amended complaints. No ruling on the motions was made before the appeal was dismissed. In the proposed complaints, some issues changed. What we are resolving here is the right of Bowling to continue with his appeal regarding the special exception that was granted on December 5, 1994. To the extent other objections are made in a proper and revised appeal, our discussion may not be fully applicable.
¶ 54. Regardless of the terms of Section 11-51-75, a part of the present case is unaffected even by a strict application of that statute. The original complaint sought removal of the supervisors from office. The proposed third amended complaint abandons that remedy. Whatever the trial court does with that claim, it is not one that is to be dismissed because Bowling did not appeal within 10 days with a bill of exceptions. It is not proper relief on an appeal from Board action. Such an appeal determines whether the action of the Board shall be perpetuated, not whether a member of the Board shall be removed. The petition does not state the authority that would permit the court to remove a supervisor, and we find none. The complaint joined issues proper for an appeal with separate issues that are not.
¶ 55. The trial court can consider any argument the parties wish to make on such questions. Further, any attack on the June 30, 1993 variance based on the Board's having failed to comply with a notice requirement would not be affected by the need to appeal within 10 days, though the issue might be moot if the later special exception replaced the variance.
¶ 56. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED ONEHALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEES.
*443 BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., DIAZ, KING, AND PAYNE, JJ., CONCUR.
COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
HERRING AND HINKEBEIN, JJ., NOT PARTICIPATING.
COLEMAN, J., dissenting:
¶ 57. The traditional, and indeed entirely appropriate, manner of beginning a dissent is for its scrivener to express respect or deference for the majority's resolution of the issues, even though the respect or deference is not so great that it results in the scrivener's concurrence with the majority view. Instead, I elect to begin this dissent with an expression of my respect for and admiration of the majority's Herculean effort to reconcile what seems to be an irreconcilable contradiction between Section 11-51-75 of the Mississippi Code and the Mississippi Supreme Court opinions in Canton Farm Equipment v. Richardson, 501 So.2d 1098 (Miss.1987) and Stockstill v. Hales, ___ So.2d ___, 1998 WL 470119, No. 97-CA-00203-SCT (Miss.1998). I consider these two cases to be anomalies incapable of reconciliation with the otherwise reasonably consistent chain of opinions rendered by the supreme court, in all of which that court held that the bill of exceptions was the device which Section 11-51-75 prescribed for the perfection of an appeal from a decision of the board of supervisors or a municipal board to the circuit court.
¶ 58. I begin my dissent by explaining the extent of my agreement with the majority. I agree with the majority's resolution of Bowling's second point, i.e., "The rules of procedure, both for trial and appellate courts, do not replace the jurisdictional statutes. The right to appeal is governed by statute." I also agree with the majority's analysis of Canton Farm Equipment and Stockstill, which inescapably demonstrates that for whatever reason, the supreme court simply overlooked what are to me the clear and simple requirements of Section 11-51-75 to appeal a decision of a county or municipal board to the circuit court. See the majority's analysis of Section 11-51-75 (maj.op. at p. 436).
¶ 59. It is rare, but nonetheless enlightening to its reader, for an opinion to review thoroughly both the statutory and judicial history of a statute as the majority opinion has done with the history of Section 11-51-75. It appears to me that the majority concludes from its review that "Bowling must file a bill of exceptions if he wishes to proceed and should promptly prepare and submit one to the county." (maj.op. at p. 442). The majority continues, "If such a bill approved by the county is then filed in this action in circuit court, the appeal can proceed." Id. I agree with their conclusion that a bill of exceptions is necessary to an appeal from the board of supervisors to the circuit court.
¶ 60. I dissent because I reach a slightly different conclusion from the majority's historical review of Section 11-51-75. My conclusion remains that Section 11-51-75 makes the timely filing of a bill of exceptions a prerequisite to the perfection of an appeal from the board of supervisors to the circuit court. Thus, I agree with the circuit court's finding that it lacked jurisdiction to entertain Bowling's appeal, the consequence of which was for that court to dismiss Bowling's complaint. I rest my agreement with the circuit court's disposition of this case on the supreme court's decisions in, inter alia, Moore v. Sanders, 569 So.2d 1148, 1149-50 (Miss. 1990); Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736, 744 (Miss.1980); Cox v. Board of Supervisors, 290 So.2d 629, 630 (Miss.1974); and Shannon Chair Co. v. City of Houston, 295 So.2d 753, 754-55 (Miss.1974).
¶ 61. Before I conclude my dissent, I now resort to the time-honored phrase, "with deference to my colleagues", because I wish to supplement my dissent by expressing gratuitously my concern about the possible consequence of the majority's decision to remand this case to the circuit court to permit Bowling what I perceive to be essentially an "out-of-time" appeal. Simply put, I remain concerned that the majority's decision, which it reached in its attempt to reconcile Section 11-51-75 with Canton Farm Equipment and Stockstill, may create more issues than it resolves. Canton Farm Equipment and Stockstill notwithstanding, practitioners throughout Mississippi have previously been *444 able, by consulting Section 11-51-75, to determine with certainty that only a bill of exceptions is the requisite for an appeal from a board of supervisors or municipal board to the circuit court. The majority opinion allows the possibility that only a notice of appeal, perhaps even one filed in the circuit court, rather than with the board from which the appeal is sought, is sufficient to perfect an appeal of this nature. Such a possibility may in turn create issues of notice and the vesting of jurisdiction of such an appeal in the circuit court.
¶ 62. To summarize my dissent, because in most of its opinions the supreme court has held that Section 11-51-75 required the timely filing of a bill of exceptions to perfect an appeal from a decision of a county board of supervisors or from a municipal board to the circuit court, I would affirm the Madison County Circuit Court's dismissal of Bowling's appeal because it lacked jurisdiction of the matter. From my perspective, any other resolution of the issues in this case increases appreciably the uncertainty which the supreme court's opinions in Canton Farm Equipment and Stockstill created and with which the majority opinion grapples. To repeat, I would affirm the trial court's dismissal of the case because the trial court lacked jurisdiction of the case in the absence of Bowling's timely filing of a bill of exceptions.
NOTES
[1] A separate statute was created that provides for certiorari, and it applies even if there is a right to appeal. Miss.Code Ann. § 11-51-95 (Supp. 1998)
[2] Section 11-51-75 also requires that the filing be with the board and not with the court. This defect existed and went unremarked in Canton Farm Equipment also, and is another matter that would appear to be form only, similar in the absence of penalty to the filing of a notice of appeal in the supreme court instead of the trial court in a normal civil case. M.R.A.P. 3(a).